J. R. GILLILAND, Respondent, v. THE CHICAGO & ALTON RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, November 23, 1885.

1. LEASES—LAND RENTED FOR UNLAWFUL PURPOSE—ERECTING AN ELEVATOR NOT SUCH.—It is not unlawful or improper to lease ground for the purpose of having an elevator erected thereon. Such structures are not only universal along railroad lines, but in the development and promotion of commerce, necessitating increased facilities in methods of delivery of farm products, they are recognized as invaluable auxiliaries in the commerce of the country.

2. ———— LIABILITIES OF LANDLORD AND TENANT RESPECTIVELY FOR
INJURIES TO THIRD PERSONS.—To render the landlord liable for injur-
ies to third parties, the nuisance, or act, must be such as "necessa-
rily arises from the tenant's ordinary use of the premises for the
purposes for which they were let, and not be avoidable by reasona-
ble care on the tenant's part; if it is produced only by the act of the
tenant, he alone is responsible." Ordinarily the landlord is answer-
able for injuries resulting from his own negligence, and not for
those resulting from that of the tenant. In such case, the tenant
alone is responsible. Woods on Land & Ten., sect. 384.

3. NEGLIGENCE—DAMAGES—CONNECTION BETWEEN ACT AND INJURY.
—In the action for damages resulting from negligence, there must
be a direct connection between the negligent act and the injury.
Furthermore there must be such nearness in the connection that it
must be the primary cause. And if there be the concurrence of
some other immediate agency in producing the injury, "that event
must have been the effect of the act complained of, or within the
range of probable occurrences, to a person of ordinary comprehen-
sion while engaged in the act." Sutherland on Damages, 21-57;
*Brink v. R. R.*, 17 Mo. App. 177.

4. ———— AGREED FACTS—CASE ADJUDGED.—It does not appear in
the agreed statement how far apart the two tracks were, and, there-
fore, leaving corn on the side-track may not have been the proxi-
mate cause of the cow being killed on the main track. But it
would be negligence in the defendant to leave corn on its track for
the space of thirty days, even though it was originally put there by
a tenant, for which it should be held liable for all injury proximately
caused thereby. Per Ellison, J., in separate opinion.

APPEAL from Audrain Circuit Court, HON. ELIJAH
ROBINSON, Judge.

*Reversed.*

Statement of case by the court.

This is an action to recover damages against the de-
fendant—a railroad corporation—for negligently killing
a cow belonging to plaintiff. The petition alleges two
acts of negligence ; first, in running the cars through the
town of Ladonia at an unusually rapid and dangerous
rate of speed, whereby plaintiff's cow was killed; and,
second, in allowing and permitting cobs and corn to
remain upon its railroad track at said point, which said
corn, etc, was known to attract thither stock, etc.; that

plaintiff's cow was induced to come upon the track by said corn, and was thereby killed by defendant's train of cars.

At the trial it was admitted by plaintiff that the employes of the defendant could not have avoided the accident, and were guilty of no negligence in running the train. The cause was then submitted to the court for trial, without the intervention of a jury, upon the following agreed statement of facts:

"On the 17th day of December, 1882, plaintiff's cow, of the value of thirty-five dollars, was struck and killed by a freight train running west on defendant's road, at the grain elevator in the town of Laddonia, in Audrain county. Piles of cobs and shattered corn were on the embankment beside the track, and had rolled down, more or less, upon the side-track, which was known to defendant, and had been for thirty days or more.

"The grain elevator belongs to Hisey & James, and stands on ground leased by them from defendant. That in addition to the elevator, Hisey & James had built pens in which they had stored corn, and had been prior to said 17th day of December, 1882, shelling corn and loading it for shipment into cars on defendant's road. That in loading said corn into cars, more or less would be spilled on the ground and side-track of defendant's road. That plaintiff's cow was between a car, standing on the side-track, and the elevator, which car was being loaded, or had just been loaded with shelled corn from the elevator; that as a train appeared on the main track, she ran from behind the car across the side-track and upon the main track, where she was struck and killed. Plaintiff knew that the corn pens were there; that piles of cobs and shatterd corn were upon the ground and side-tracks, and that Hisey & James' employes scattered more or less corn when loading it into the cars. He also knew his cow frequented these corn pens to eat the corn that might be found there."

The court found the law in favor of the plaintiff, and

rendered judgment accordingly. From this judgment defendant prosecutes this appeal.

McFarlane & Trimble, for the appellants.

I. The facts were agreed to, and it became a pure question of law, whether *upon the facts* plaintiff could recover. *Henry v. Bell*, 75 Mo. 198; *Waddell v. Williams*, 50 Mo. 218.

II. There was no negligence in operating the train. That the train men could not have avoided the accident is expressly admitted. The recovery must have been either on the ground that the *lease* was unlawful, or that the defendant was liable for the *negligence* of its tenants. But the lease was lawful. Powers incident and necessary to the successful operation of a railroad corporation are vested in it by implication. Rorer on Railroads, 50; *Henning v. Ins. Co.*, 47 Mo. 425; Rev. Stat., sect. 706, 765.

III. Shipments of grain in bulk is encouraged by the laws of the state. Rev. Stat., sect. 812. Corn can be shelled, and by the same machinery and power placed in an elevator and loaded thence into the cars, in bulk, at much less cost and waste than by old methods. The whole benefit is to the shipper. The railroad company gets no profit from it. The elevator must necessarily have a position near the track, upon land usually constituting the right of way, or depot grounds of the company. The lease of this ground, then, was lawful and proper.

IV. If the lease was lawful, then defendant was not responsible, in this case, for the negligent manner in hich the land was lawfully used. Woods' Landlord and Tenant, 618, sect. 384; Sherm. & Redf. Neg., sect. 501.

V. The negligence shown was not the proximate cause of the damage. The cause is too remote. The general rule is that "one is answerable for the consequences of a fault which are natural and probable." If one's "fault happen to concur with something extraordinary, or unforeseen, he will not be liable." Sherm. & Redf. Neg., sect. 10; *McGrew v. Stone*, 53 Pa. St. 436.

VI.   The plaintiff was negligent in permitting his cow to go into this dangerous place, and in doing so was guilty of such contributory negligence as precludes him from recovery.  *R. R. v. Adams*, 43 Ind. 237 ; *R. R. v. Street*, 50 Ind. 225 ; *Williams v. R. R.*, 11 Am. & English R. R. Cases, page 421.

No brief on file for respondent.

PHILIPS, P. J.—The case being submitted upon an agreed statement of facts, the only question to be determined is, whether on the law, as applied to these facts, the judgment of the circuit court was for the right party. It being admitted that there is no proof of the alleged negligence in running the train, the verdict of the court must rest alone upon the question of defendant's liability for the imputed negligence in permitting corn, etc., to be in and about the railroad track.

The agreed statement shows that the only agency which the defendant had in the events which led to the injury of the plaintiff's cow, was in leasing the ground to Hisey & James.   It neither erected, owned nor controlled the elevator.   It did not spill the cobs and corn, nor place them near its track.   Hisey & James built, operated, and controlled the elevator, and they, or their servants spilt the corn, and left it so that it ran onto or near defendant's railroad track.   The only act of the defendant, immediately connected with the spilling, was in running its cars on its own track, and receiving grain from this elevator.

Upon what principle of law, then, is the defendant to be held bound for the injury to the cow ?   It must be either on the ground that, as owner of the land, it leased it to Hisey & James for an unlawful purpose, or for a use by the lessees which it knew, or might reasonably have anticipated, would probably, or naturally, result in such injury to a third party.

We take it that it will hardly be claimed that it was unlawful or improper for the defendant to lease this

ground for the purpose of having an elevator erected thereon. Such structures are not only universal along railroad lines, but in the development and promotion of commerce, necessitating increased facilities in methods of delivery of farm products, they are recognized as invaluable auxiliaries · in the commerce of the country. The courts should hesitate to declare them either nuisances or dangerous.

It may be conceded, for the purposes of this case, that, if the defendant ( landlord ) knowingly demised the premises for a use which would naturally, or probably, inflict injury upon third parties, it might be equally liable therefor, as the tenant who operated the elevator. But I understand the proper limitation and application of this rule to be, that to render the landlord liable, the nuisance, or act, must be such as "necessarily arises from the tenant's ordinary use of the premises for the purpose for which they were let, and not be avoidable by reasonable care on the tenant's part. If it is produced only by the act of the tenant, he alone is responsible." Taylor L. & T., sect. 174. Ordinarily the rule is, that the landlord is answerable for injuries resulting from his own negligence, and not for those resulting from that of the tenant. In such case the tenant alone is responsible. Wood's L. & T., sect. 384.

Being the occupant of the elevator, and directly causing the spilling of the corn, if there be any liability at all, the tenants are *prima facie* liable for the negligent act, amounting to an improper use of the premises. Taylor L. & T., sect. 178.

Was there, then, any necessary, natural, or reasonably probable connection between the act of leasing and the injury complained of? Did it arise from the tenant's ordinary use of the premises, and was the act of negligence "avoidable by reasonable care on the tenant's part?" There certainly was no necessary connection between the proper use of the elevator and the spilling of the corn, much less the leaving of the corn on or near the track, and the coming of and injury to the cow. The

lessor had the right to assume, in letting his premises, that the lessee would perform his duty to the public, and operate the elevator with care. The lessor could not be held to anticipate that its tenants would so build the elevator, or so use it, as to leave cobs and corn scattered around so that they would roll down the embankment on to or near the railroad track, or that the tenants would leave them there so long as to attract the cow, and occasion injury to anyone.

The landlord is not answerable for any wrongful use or negligent management of the premises by the lessee. Sher. & Red. on Neg., sect. 501.    In *Norton v. Wiswall* (26 Barb. 618), the lessor of a ferry was held not to be responsible for injury caused by the negligence of the lessee's employes.    In *Morris v. Brewer* (Anth. N. P. 368), it was held that the lessor of premises, which were offensively used by the lessee as a livery stable, is not liable for damages therefor, unless it appears that when he demised them he had reason to believe the business would be a nuisance.  So in *Weston v. Tailors, etc.* (Hay 66, 14 F. C., 1232), the proprietor of a tenant house was sued for damages occasioned by the tenant in flooding a lower flat by the careless and improper use of a water closet. The verdict of the jury in favor of plaintiff was set aside, the court observing of the water closet: "If it is constructed in the ordinary manner, and so as not necessarily, or in extreme probability, to occasion damage from its ordinary use, there is no further liability on the landlord.  But, if by neglect, or by what does sometimes occur, mischievous practices on the part of the tenant, damage does occur, it is not the landlord, but the tenant who is liable."

Applying these adjudications to the admitted facts of this case, we must hold that the law is with the defendant.

II.    There is also this further consideration : In the action for damages resulting from negligence, there must be a direct connection between the negligent act and the

injury. There must be such relation between the act done and the injury as to have warranted a reasonable person in anticipating that such result would naturally, or probably ensue from the act done or suffered, by the party sought to be held. Furthermore, there must be some such nearness in the connection that it must be the primary cause. And, if there be the concurrence of some other immediate agency in producing the injury, "that event must have been the effect of the act complained of, or within the range of probable occurrence to a person of ordinary comprehension, while engaged in the act." Sutherland Damages, 21–57 ; *Brink v. R. R. Co.*, 17 Mo. App. 177.

While it is true that the agreed statement of facts shows that the defendant knew, before the injury, that the cobs, etc., were near the track, yet this was the side-track ; and the plaintiff's cow was between a car standing on the side-track, and the elevator, and received the injury, not while eating the corn, etc., near where it had fallen, but by passing from behind the car on the side track and onto the main track, where she was run into by defendant's car. This injury might as easily have occurred to her if she had been grazing near the side-track, and received the injury by attempting to pass over the main track. No one, in such case, would contend that the defendant would have been liable for the injury in the latter case without fault or negligence in defendant's servants in running and managing the train at that time and place.

We think, under all the facts of this case, there was such intervention of concurring causes outside of the immediate agency of the defendant, as to place the injury beyond the natural and probable consequences of the imputed negligence of the defendant.

The judgment of the circuit court is, therefore, reversed. All concur.

Ellison, J.—The *onus* was on plaintiff to make out his case of negligence against defendant. The agreed

statement of facts stands in lieu of a special verdict, and all facts necessary to a determination of the case, must be definitely ascertained. If there be any ambiguity, any omission of facts necessary to a recovery, any lack of clearness and certainty on material points, the judgment will not be allowed to stand. *Gage v. Gates*, 62 Mo. 416. The corn was left on the side-track and the cow was killed on the main track. It does not appear in the agreed statement how far apart the two tracks were, and I am, therefore, unable to say that leaving corn on the side-track, was the proximate cause of the cow being killed on the main track. I think, however, it would be negligence in defendant to leave corn on its track for the space of thirty days, even though it was originally put there by a tenant, for which it should be held liable for all injury proximately caused thereby.