PICKNEY L. POWERS, Appellant, v. GEORGE L. BRALEY, Respondent.

St. Louis Court of Appeals, May 20, 1890.

1. **Partnership:** EFFECT OF LEVY ON FIRM ASSETS UNDER EXECUTION AGAINST ONE MEMBER FOR DEBT OF THE FIRM. If judgment be obtained against one member of a copartnership upon indebtedness of the firm, and property of the copartnership be duly levied upon and sold under the execution issued on such judgment, the purchaser at that sale acquires all the title of the copartnership, and not merely the interest of such member, to such property.

2. **Justices of the Peace:** CERTIFICATE AS EVIDENCE OF HIS OFFICIAL CHARACTER. If a copy of a justice's docket be certified by another person, who claims to be the successor of such justice, and who has in his possession and custody the books and papers of such justice, the certificate of such person, that he is the successor of such justice, is *prima facie* evidence of the fact so certified, and renders the certified copy admissible without extraneous evidence of his official character.

3. **Constables:** OFFICERS DE FACTO: VALIDITY OF OFFICIAL ACTS. If one be the acting constable of a township, and not a mere intruder, the fact that he has not given bond as constable will not invalidate a levy and sale made by him.

4. **Replevin:** EQUITABLE RIGHTS. *Semble* that, after the dissolution of a copartnership composed of two members, of whom one has contributed the entire capital of the firm, and the other has received all the profits of its business and has no beneficial interest in its remaining assets, the former may by suit in replevin recover personal property of the partnership in the possession of the latter, notwithstanding that there has not been an accounting between the two partners.

*Appeal from the Stoddard Circuit Court.*—HON. JOHN G. WEAR, Judge.

REVERSED AND REMANDED.

*Houck & Keaton*, for appellant.

(1) Plaintiff had the general property in the mill and was entitled to the immediate and exclusive possession thereof according to the evidence. Story on Part., secs. 90, 94, 97 and 101; *Fleming v. Clarke*, 22 Mo. App. 218; *Phelps v. McNeely*, 66 Mo. 554. (2) Plaintiff purchased from Kelly, who purchased the property under a sale to pay a partnership debt, and his possession thereunder · for two years entitled plaintiff to recover. *Weak v. Etter*, 81 Mo. 375, and cases cited; *Phillips v. Schall*, 21 Mo. App. 38, 42; *Andrews v. Costigan*, 30 Mo. App. 29; *Phelps v. McNeely, supra.* (3) Notice to one partner, or service on one member of a firm is sufficient to authorize a judgment to sell partnership property to pay a partnership debt, and confer a title on stranger to such judgment. *Bank v.* *Altheimer*, 91 Mo. 190; Story on Part., sec. 263; *Hagar v. Graves*, 25 Mo. App. 165. (4) Each partner can dispose of the partnership effects for the purpose of paying its debts, and so by law, sale under execution

for a firm debt against one member, transfers the property of the firm. *Weil v. Simmons*, 66 Mo. 517 ; *Bank v. Brenneisen*, 97 Mo. 145. ( 5 ) The firm debt is a lien on the firm property, and its sale to pay such debt conveys title to firm property. *Priest v. Chouteau*, 85 Mo. 398.

*J. L. Fort*, for respondent.

BIGGS, J.—This action of replevin was instituted for the recovery of the possession of a sawmill and appurtenances and two pieces of steamboat pipe. The suit was begun in the circuit court, and plaintiff's petition was in the usual form. The defendant filed an answer, in which he admitted that the property was in his possession and that he detained it from the plaintiff, but he denied the plaintiff's right to its exclusive possession, and consequently his right to maintain the action, for the reason that the plaintiff and the defendant owned the property sued for as tenants in common. The cause was submitted to the court sitting as a jury, and the finding and judgment were for the defendant. The plaintiff, being dissatisfied. with the result, has appealed the case to this court.

The evidence in the case tended to show that the property in dispute, except the two pieces of steamboat pipe, formerly belonged to the firm of J. L. Powers & Co., composed of the plaintiff, the defendant and one J. W. Evans ; that the sawmill and other property used in connection with it were purchased by the firm in July, 1884, and that, on the seventh day of January, 1885, the defendant bought the interest of Evans in the firm, and thereupon the partnership was dissolved and ceased to do business; that, in February, 1885, Allison & Co. instituted a suit before a justice of the peace in Wayne county against the members of the firm upon a firm obligation ( the original summons which was read

in evidence showed that the plaintiff *only* was served with notice of the suit; it appears, however, from an inspection of the copy of the docket entries of the justice offered in evidence by the plaintiff, but excluded by the court, that judgment was rendered against all the members of the firm ); that the property in controversy was, on the fourth day of April, 1885, sold under an execution issued upon this judgment, and one Samuel R. Kelly became purchaser; that, on the fifth day of June, 1885, the plaintiff purchased the property from Kelly and continued thereafter in the possession of the same until the fifteenth day of October, 1887, when it was taken by some one from the plaintiff's premises in Wayne county and removed to Stoddard county, where it was shortly afterwards found in the possession of the defendant.

Upon this state of the proof the court gave the following declaration of law : "The court declares the law to be that, if the return of the constable on the summons issued by W. A. Davis, justice of the peace, in the suit of W. S. Allison & Co. against J. L. Powers, G. R. Braley and J. W. Evans, only shows service on J. L. Powers, then the judgment and execution thereon was void as to G. R. Braley and J. W. Evans, and the sale of the property under said execution was void and did not affect any interest the defendant G. R. Braley had in said property."

If the judgment before the justice was, as a matter of fact, entered without notice to the defendant and Evans, it is a nullity as to them, but is good as to Powers, who was properly served with notice ; therefore the instruction of the court, in so far as it declared the judgment to be void as to the defendant, was correct. But we cannot yield our assent to the further conclusion that the sale of the partnership property under the execution against Powers in no way affected the defendant's title thereto. This question is one of

first impression in this state, so far as we are now advised, but we think that both reason and authority sustain us in the conclusion that, where a judgment has been obtained against one partner only on an unquestioned firm obligation, and personal property belonging to the firm is levied upon and sold to satisfy such judgment, the sale will pass to the purchaser the entire title. This conclusion is not unreasonable, but it is in harmony with the law governing partnerships. It is well settled that one partner can sell, in the regular course of business, all the goods of his firm ; he may bind the other members as makers or indorsers of negotiable securities, provided the transactions are within the scope of the partnership business ; he can pledge or mortgage the personal assets of the firm to secure the payment of a partnership debt; he has authority to sell to a firm creditor the firm assets to pay a partnership liability, and, therefore, when a judgment is obtained against a single partner upon a partnership obligation, and the personal assets of the firm are taken on execution to satisfy the judgment, such levy must be regarded as an application by the partner, through legal process, of the joint fund to the satisfaction of a joint debt. And it would make no difference whether the judgment against the partner was involuntary or by confession ; the result would be the same. This position in no way militates against the well-known doctrine that one partner cannot confess a judgment against his copartners, because such judgment would bind the separate estate of the members, and this would be beyond the scope of partnership authority. But this principle is not violated by permitting a judgment against a single partner for a firm obligation to be satisfied by the sale of partnership property. In such cases the court would restrain the execution to partnership effects and to the separate estate of the partner personally bound. *Ross v. Howell*, 84 Pa. St. 129 ;

*Harper v. Fox*, 7 Watts and Serg. 142; *Taylor v. Henderson*, 17 Serg. & Rawle, 456; *Tapley v. Butterfield*, 1 Met. (Mass.) 515; *Dubois' Appeal*, 38 Pa. St. 231; *Brinkerhoff v. Marvin*, 5 John. Ch. 320; *Whittemore v. Elliott*, 7 Hun. 518.

Our conclusion necessarily leads to the condemnation of the theory upon which the circuit court proceeded. That court was of the opinion that the sale to Kelly could not convey the defendant's interest or title to the property sold, and that the purchase only made Kelly the owner of the plaintiff's undivided interest and constituted him a tenant in common with the defendant. Treating the plaintiff as a purchaser from Kelly of this undivided interest, the court applied the general rule that replevin will not lie at the suit of one tenant in common against another, because the one is not entitled to the exclusive possession of the joint property as against the other. Our conclusion is that, if there was a valid judgment against the plaintiff based on an unquestioned firm obligation, and the sale was properly conducted, Kelly obtained by his purchase the full title of the firm, and, if the plaintiff afterwards became the owner of the property by purchase from Kelly, he must be regarded as its sole owner and entitled to its possession as against the defendant.

There are some other minor questions involved, concerning which we ought to indicate our opinion, as the same matters are likely to occur on another trial. The plaintiff offered in evidence a copy of the docket entries in the case of Allison & Co. *v.* Powers & Co. The copy was made and certified by a justice of the peace, who claimed to be the successor in office of the justice rendering the judgment, and who had in his possession and custody the books and papers of his predecessor. The court held that the copy was not properly certified, and excluded it. In this we think

the court committed error. Section 2325, Revised Statutes, 1879, is as follows: "Copies of proceedings had before a justice of the peace, where such justice is out of office, certified by the justice who is in possession of the docket and papers of such justice, or by him in whose lawful custody they are, shall be received in evidence in any court in this state." The objection made was that the certificate by the justice that he was the successor in office of the justice, who rendered the judgment, was no evidence of that fact. This identical objection was raised and passed on by the supreme court in the case of *Linderman v. Edson*, 25 Mo. 105. The court, in substance, decided that the fact that the justice certifies the papers officially raises a presumption that he is lawfully possessed of them, and that such presumption would continue until the contrary was shown. To the same effect is the case of *Kronski v. Railroad*, 77 Mo. 362.

There was some question raised on the trial, and it has been argued here, concerning the validity of the levy and sale made by C. C. Wills, acting constable of the township. The evidence was to the effect that he was acting constable both before and after the sale, but had not given bond. It nowhere appears that he was a mere intruder; therefore, we must conclude that he was an officer *de facto*, as his official acts were publicly recognized. The acts of a *de facto* official, whether judicial or ministerial, are valid so far as the public and third parties are concerned. *Ex parte Snyder*, 64 Mo. 58; *Fleming v. Mulhall*, 9 Mo. App. 71; *State ex rel. v. McCann*, 11 Mo. App. 596. The objection made by the defendant, that a justice of the peace has no authority to appoint a third person to serve final process, goes for nothing, because it nowhere appears in the record that Wills was especially deputized by the justice to make the levy and sale.

But, if it be conceded that the sale by Wills was invalid, yet, under the evidence as preserved in the

record, we are of opinion that the plaintiff's right of recovery ought not to be defeated by reason of the fact that there had been no formal settlement of the partnership affairs of J. L. Powers & Co. The plaintiff testified, and there is no proof to the contrary, that the firm was dissolved in January, 1885; that Kelly bought and received the possession of the property in April, 1885; that the defendant offered to buy the property from Kelly, thereby admitting the validity of the purchase by him, and that he (plaintiff) held the property for two years, as a purchaser from Kelly, and not as a member of the firm. And the plaintiff also testified that he furnished all the money to pay for the mill in the first instance, and that the defendant received all the profits of the partnership business. The circuit court seems to have treated this evidence as irrelevant to the issues, and to have held that it could only be admissible in a chancery proceeding to adjust the copartnership accounts. Courts deal, or at least ought to deal, with the substance of things and not their mere form. Why should the law permit the defendant to seize upon this property in the hands of the plaintiff, and then defend and justify his act and his subsequent conduct upon the sole ground, that there had been no adjustment of the partnership business, when the record shows (without contradiction) that the defendant as a member of the firm could have no beneficial interest in the property. Why should the plaintiff be turned out of court and driven to another form of action to obtain his property? Since the case of *Dilworth v. McKelvy*, 30 Mo. 149, our replevin statute has received a liberal interpretation, and it has been held to possess sufficient flexibility to adjust all equities arising in the action. *Dougherty v. Cooper*, 77 Mo. 535; *Lewis v. Mason*, 94 Mo. 558; *Gillham v. Kerone*, 45 Mo. 487; *Boutell v. Warne*, 62 Mo. 350. We are not prepared to say that the doctrine of the cases cited can be so extended in replevin suits as to

authorize, in ordinary cases, the adjustment of partnership accounts in order to settle the rights of contending partners to the possession of partnership property. But, under the facts of the present case, we can imagine no reason for driving the plaintiff to his equitable action to regain possession of his property, since under the evidence the defendant had no interest therein. However, this view of the case would only become of practical importance on a retrial, in the event the sale of the constable should be deemed invalid.

Our conclusion necessarily requires a retrial of the case. The judgment will, therefore, be reversed and the cause remanded. All the judges concur.