STELLA BAKER v. MARVIN H. GATES et al., Executors of Will of JEMUEL C. GATES, Appellants.

Division One, December 1, 1919.

1. **NEW TRIAL:** Sufficiency of Evidence: Appellate Practice. If there was any evidence developed at the trial to uphold a verdict

Baker v. Gates.

for plaintiff, the order granting to her a new trial must be affirmed on appeal; if there was none, the order will be set aside and the verdict for defendants reinstated.

2. **LEASE:** Relation: Right of Lessor to Inspect. If the written contract granted to the lessee an estate for years, and entitled him to possession during the term against the lessor, without any right to enter except to inspect the quarry work and ascertain whether or not it was being performed according to agreement, the relation was that of lessor and lessee.

3. **CREATION OF NUISANCE:** Liability of Lessor. If the intended use of leased premises by the lessee would, of necessity, create a nuisance, the lessor must be held to have authorized the nuisance and to be answerable for consequent damage; for no one may use, or agree that some one else may use, his property so as to harm others.

4. ———: ———: Explosions in Stone Quarry: Question for Jury. That a hill, leased for a stone quarry, could not be worked without danger to persons and property 400 or 450 feet from the place of blasting, and that therefore the blasting constituted a nuisance, is deducible from testimony showing that the danger was continuous, or at least occurred at intervals for a considerable period, and that it disturbed dwellers within the range of the blast, and persons exercising the common right of travel on street cars on a boulevard 400 to 450 feet from the point of blasting; and that a nuisance did not necessarily arise from the work may be inferred from evidence that the quarry could be worked without risk to the neighborhood and that before the day of the injury to plaintiff as she was riding on a street car no debris had been thrown as far as the boulevard; and hence, whether, under such circumstances, a nuisance would necessarily arise from the work, was a jury matter.

5. ———: ———: Quarry Operated by Receiver and Not by Lessee. Where the leased quarry was not being operated by the lessee at the time a flying stone struck a passenger on a street car, or by any one else for whose conduct the lessor was responsible, but, without the consent of either, by a receiver in bankruptcy of a construction company under an order of court, neither the lessor, nor the lessee is liable in damages for the injury to the passenger, the lessee's only connection with the work at the time being at most that of an employee or agent of the receiver.

Appeal from Jackson Circuit Court.—*Hon. Thomas B. Buckner*, Judge.

REVERSED AND REMANDED (*with directions*).

*J. R. Bell* and *Lathrop, Morrow, Fox* and *Moore* for appellants.

There is no liability on part of owner of premises for act of trespasser in possession and control. Shippey v. Kansas City, 254 Mo. 25; Pope v. Boyle, 98 Mo. 527; Grogan v. Foundry Co., 87 Mo. 321; Reinhardt v. Holmes, 143 Mo. App. 212; Mayer v. Shrump, 111 Mo. App. 54; Gildersleeve v. Overstolz, 97 Mo. App. 303; Powell v. Kenaday, 95 Mo. App. 713; Schmidt v. Cook, 23 N. Y. Supp. 799; Wolf v. Kilpatrick, 101 N. Y. 146.

*J. K. Cubbison, Wm. G. Holt* and *H. G. Pope* for respondent.

(1) The trial court has a discretion to grant one new trial, and the appellate court will not interfere with its exercise of that discretion, however much it may disagree with that court upon such ruling, when there is any substantial evidence to support it. When the trial judge is not satisfied with the verdict, or when he thinks the verdict is against the weight of the evidence, it is not only his right but his plain duty to grant a new trial. Fitzjohn v. Transit Co., 183 Mo. 78; Harper v. Hotel Co., 142 Mo. 378; Haven v. Railroad, 155 Mo. 216; Kreinzel v. Stevens, 155 Mo. 285; Grace v. Railroad, 156 Mo. 301; Herndon v. Lewis, 175 Mo. 125; Ottomeyer v. Pritchett, 178 Mo. 165; Warner v. Railroad, 178 Mo. 129; Casey v. Transit Co., 186 Mo. 229; Franklin v. Railroad, 188 Mo. 542. (2) The blasting operations in question were inaugurated, created and started by Gates and Spitcaufsky and they were joint tortfeasors. If they knew or should have known that said blasting operations might cause danger or injury to others they were responsible for all the natural and probable consequences of such action, and neither one can escape such responsibility because of the acts of their agents or of an independent contractor. Gates entered into a contract with John Spitcaufsky by the terms of which Spitcaufsky was to do the blasting for the benefit

of Gates, and defendants cannot escape liability on the theory that Spitcaufsky (who plaintiff introduced proof showing was doing the blasting at the very moment of the accident to plaintiff) was a trespasser on said land where the blasting was being done, and especially when the evidence shows that all the defendants did prior to the accident was to serve written notice on Spitcaufsky in an attempt to cancel said contract or lease, and which attempt simply resulted in a lawsuit between defendants and Spitcaufsky which was brought by Gates after said accident, and when the evidence further shows that defendants took no further steps, outside of serving said notices, to stop said blasting operations by Spitcaufsky prior to said accident. Salmon v. Kansas City, 241 Mo. 14; Daneschocky v. Sieben, 193 S. W. 966; Dillon v. Hunt, 11 Mo. App. 246; Railway Co. v. Morey, 47 Ohio St. 207; Railway Co. v. Coskry, 92 Ala. 254; Carman v. Railroad, 4 Ohio St. 399; McCarrier v. Hollister, 15 S. D. 366; Robinson v. Webb, 11 Bush. 464; Norwalk Gaslight Co. v. Norwalk, 63 Conn. 495; Anderson v. Fleming, 66 L. R. S. (Ind.) 125; Nashville v. Brown, 9 Heisk. (Tenn.) 1; Weber v. Railroad, 20 App. Div. (N. Y.) 292; Cooley on Torts (2 Ed.), 644; Railroad v. Watkins, 43 Kan. 50; James v. McMinimy, 93 Ky. 471; Vogel v. New York, 92 N. Y. 19; Clark v. Fry, 8 Ohio St. 358; Walker v. New York, 107 App. Div. 351; Richmond v. Smith, 101 Va. 161; Cohen v. New York, 113 N. Y. 532; Chapman v. Rochester, 110 N. Y. 273; Decatur v. Hamilton, 89 Ill. App. 561; Smith v. Davis, 22 App. D. C. 298; Frick v. Kansas City, 117 Mo. App. 488; Brown v. Scruggs, 141 Mo. App. 632; Carson v. Construction Co., 189 Mo. App. 120; Johnson v. Machine Co., 193 Mo. App. 199.

GOODE, J.—This is an action for damages caused by a personal injury to plaintiff. At the conclusion of the evidence the court directed a verdict for the appellants, Marvin H. Gates and B. T. Whipple, as executors of the last will of Jemuel C. Gates, deceased; but after-

wards entered an order sustaining plaintiff's motion for new trial, without stating the reason for the order. The appeal was taken by said Marvin H. Gates and B. T. Whipple, as executors.

The case was begun against Jemuel C. Gates, Joseph M. Jones, receiver of the Spitcaufsky Construction Company, and John Spitcaufsky. Jemuel Gates died during the pendency of the proceeding and an answer to an amended petition filed by plaintiff was put in by said executors at the January term, 1917. As between plaintiff and Joseph M. Jones, as said receiver, the case was settled December 29, 1914, for one hundred dollars, plaintiff signing a stipulation to dismiss as to the receiver and to prosecute no further the cause against him. Jones was receiver of the Spitcaufsky Construction Company under an appointment made in a proceeding in bankruptcy.

Plaintiff was hurt between eight-thirty and nine o'clock on the morning of August 4, 1914, and while she was a passenger in an electric trolley car running southward on Southwest Boulevard, a main thoroughfare between Kansas City, Missouri, and the City of Rosedale, Kansas. As the car was passing a quarry some four hundred and fifty feet from the boulevard, three charges of powder or dynamite were exploded in the quarry, hurling fragments of rock as far as the boulevard, some of it falling about the car, and one striking plaintiff's wrist. The weather was warm; the car windows were open and plaintiff had rested her arm on the windowsill. There was evidence that on previous days in the year, blasts had been discharged in the quarry, violent enough to throw rocks three or four inches in diameter, as was the one which struck plaintiff, and perhaps some larger, onto the boulevard and beyond it.

The quarry was in a piece of ground known as Deitz hill, an eminence a hundred feet or more high and from 400 to 450 feet west of the boulevard and the street railway tracks thereon. The land where Deitz

hill is belonged to Jemuel Gates, who demised it, February 12, 1913, by a written agreement, to John Spitcaufsky, for fifteen years. The quarry is situated on the brow of the hill, facnig eastwardly toward Southwest Boulevard. Tracks of two or three steam railroads extend near the east foot of the hill, between it and the boulevard, nearly on a level with the boulevard, but further from it than from the hill. One dollar is recited to have been paid and received as part of the consideration for the lease, but the instrument says the term was granted "principally for and in consideration of the premises, covenants and agreement to pay, do and perform those moneys, acts and things which the lessee hereinafter promises, covenants and agrees to pay and do." What Gates wanted was to have Deitz hill reduced to the level of the adjacent tracks of the railroad companies, and Spitcaufsky's undertaking to do this was the true consideration for the agreement. The contract contemplated that Spitcaufsky might make contracts with "companies, corporations or persons" to take out and crush rock on the premises; that such contracts should not impair or diminish the obligation of the lessee to perform his covenants, and there is a recital that it was understood "the personal qualifications of the lessee are largely the inducement of the lessor to enter into this lease." It was further provided that the lease was to be terminated "by the death or incapacity of the lessee," and that any person, company or corporation at that time in the actual occupancy of the premises and performing the contemplated work under contracts with the lessee, might continue operation upon giving the lessor satisfactory sureties and in a specified amount, for the strict observance by such occupant of the terms of the agreement (Pars. I, IV and XII of Lease). It was agreed that the lease should neither be assigned nor recorded and the lessee was to use every effort and devote his entire time to the removal of all rock and material above the grade of the railroad tracks, "the very purpose and

essence of this agreement being that such work shall be conducted with all dispatch.'' The lessor and his agents were to have access to the property for the purpose of inspecting the work as it proceeded, and Gates was accorded the option to terminate the lease for breach of any of the stipulations by Spitcaufsky, by serving certain notices on him.

On December 8, 1913, Jemuel Gates served notice on John Spitcaufsky that, because of the latter's failure to comply with certain specified terms of. the lease, Gates had elected to terminate it on January 15, 1914, unless prior to that date Spitcaufsky had complied with those terms. Another notice was served on Spitcaufsky, January 17, 1914, from which it appears he had written to Gates that he had complied as requested; but Gates reiterated his complaint of Spitcaufsky's defaults and declared the lease at an end.

On July 21, 1914, two weeks before the accident in question Jemuel Gates served a notice on Joseph M. Jones, as receiver of the Spitcaufsky Construction Company, demanding that Jones desist from trespassing upon the Deitz hill property and taking rock from the quarry; saying that he would be held accountable for past and future trespasses; further saying Spitcaufsky had violated the terms on which he had been given the' right to take rock from the premises, and because of the violation Gates had cancelled his right; that neither Spitcaufsky nor any one else had the right to permit Jones to enter upon or take rock from the premises.

Jemuel Gates filed an action against John Spitcaufsky to the March term, 1915, of the Jackson County Circuit Court to quiet Gates's title to the premises, setting forth breaches of the terms of the lease as stated in the aforesaid notices, and that the lease had become null and void; that Spitcaufsky had recognized the lease was at an end, but notwithstanding those facts was "claiming the right of possession of the above described premises by virtue of the said lease and has refused to cancel or surrender the said lease in writing and thereby said lease, although terminated, in fact

constitutes a cloud upon the title of this plaintiff to the property described in said lease and that plaintiff is remediless at law," etc. Spitcaufsky denied by answer the alleged breaches. At the July term, 1917, when the action was in the names of Marvin H. Gates and B. Thompson Whipple, as executors of Jemuel Gates, a judgment was rendered that the lease had been terminated; that neither Spitcaufsky nor any one claiming by, through or under him had any right, title, interest or dominion over the leasehold premises, and the lease instrument was declared cancelled and removed as a cloud upon the title of Jemuel Gates and his executors.

The amended petition on which the case at bar was tried, alleges Gates leased the premises to Spitcaufsky to use as a stone quarry, and by agreements in the lease authorized and permitted Spitcaufsky to take rock and dirt from the hill; that Gates knew Spitcaufsky in removing the dirt and stone and levelling the hill, would explode large blasts of nitro-glycerine, dynamite and other high explosives; knew the explosions would throw dirt, gravel and rock to great distances and would endanger the lives and property of persons in the vicinity and of passengers on street cars on Southwest Boulevard. It was alleged, next, that Joseph M. Jones was at all times mentioned in the petition, the duly appointed, qualified and acting receiver of the Spitcaufsky Construction Company; that said Jones, as such receiver, was on August 4, 1914, and for a long time prior thereto had been, in charge and control of the stone quarry and Construction Company; that Jemuel Gates, on August 4, 1914, and long prior thereto, knew said Jones, as such receiver, was carelessly and negligently using nitro-glycerine, dynamite, powder and other high explosives, and knew, or should have known, that said receiver, by his negligent methods of blasting, was throwing rock and dirt from the hill and endangering the lives and property of adjacent property owners and the traveling public. This allegation also occurs:

"Plaintiff further states that John Spitcaufsky during all the times hereinafter mentioned, was aiding, griding, directing and assisting said Joseph M. Jones, the receiver, in the operation of said stone quarry, and as agent of said receiver was carelessly and negligently aiding, guiding and directing the operation of said stone quarry."

After the averment just quoted, the petition alleges that Jemuel C. Gates as the owner of the premises and John Spitcaufsky and Joseph M. Jones as receiver, were, on August 4, 1914, in charge of and operating the premises as a rock quarry; that Gates and Jones, as receiver, and Spitcaufsky were, on said date, operating and conducting a nuisance; that they knew, or should have known, said quarry was a nuisance and knew it was a menace to the traveling public; on August 4, 1914, Gates and Jones, as receiver, and Spitcaufsky knew, or should have known, street cars were constantly operated on Southwest Boulevard past the stone quarry, with passengers in the cars continually in danger of rocks thrown by the blasts; that said defendants caused and permitted such blasts to be made and as a natural result thereof plaintiff was struck by a rock, etc.

Regarding who was operating the quarry on and prior to August 4th, the receiver, Joseph M. Jones, testified as follows: He was receiver in bankruptcy of the Spitcaufsky Construction Company; he had never been given permission by either Jemuel Gates or his executors to go on the land; the blasting was done by men employed by him and who were on his payroll as receiver of said Construction Company, and he paid them; he was conducting the operations as such receiver; had been ordered to take possession of all the property of the Construction Company, and went to Deitz hill to take possession of its property there; some of the men who had been at work there previously continued to work under him, and some did not; John Spitcaufsky went to the hill occasionally, and he discussed with Spitcaufsky the work in a general way, but the foreman in charge for him as

receiver was named Stubblefield; as receiver he (Jones) continued to use some of the tools and mules previously used by the Construction Company; he took charge of the affairs of that company about June 13, 1914, and did no work in the quarry after November, 1914.

If there is any evidence to uphold a verdict for plaintiff, the order for a new trial must be affirmed; if there is none, it ought to be set aside and the verdict for appellants reinstated. [Ottomeyer v. Pritchett, 178 Mo. 160, 165; Fitzjohn v. Transit Co., 183 Mo. 74, 78.] The position taken for plaintiff is that the contract between Jemuel Gates and John Spitcaufsky was entered into by the former for the purpose of binding Spitcaufsky to perform work on Deitz hill which would endanger persons in the vicinity and on the boulevard, even if done with due care; and this would lay Gates liable for any damages occurring in the course of the work, whether the contract created the relation of lessor and lessee between him and Spitcaufsky, or proprietor and independent contractor. The relation established was that of lessor and lessee; for the instrument granted to Spitcaufsky an estate for years in the premises, and entitled him to possession during the term against Gates, who had no right to enter except to inspect the work and ascertain whether or not it was being performed according to agreement. [1 Tiffany on Landlord and Tenant, sec. 15, p. 141.] If the intended use of the premises by Spitcaufsky would, of necessity, create a nuisance, Gates, as lessor, must be held to have authorized the nuisance, and to be answerable for consequent damage; for no one may either use, or agree that some one else may use, his property so as to harm others. This fundamental principle has been applied in cases where the facts were quite like those before us. In Harris v. James (45 L. J. Q. B. [N. S.] 545) the action was against a landlord who had let a field to a tenant to operate a quarry on it, the necessary result of blasting in the quarry being to throw dirt and stone on plaintiff's land. That being true, the court held

*Nuisance: Liability of Lessor.*

the landlord liable, although he would not have been if the injury had been caused by the tenant's lack of skill or care in blasting.

And so it was ruled where a house was let for the storage of powder and a damaging explosion occurred; it appearing the vicinity was so populous that a powder magazine must be a nuisance. [Prussak v. Hutton, 51 N. Y. Supp. 761.]

And where an owner leased his premises for a kiln to dry lumber, a process which, however carefully managed, would endanger by fire the house of the plaintiff, and his house in fact caught fire from the kiln, the owner was made to respond in damages. [Helwig v. Jordan, 53 Ind. 21.]

Other apposite authorities might be cited, and among them Gilliland v. Railroad, 19 Mo. App. 411, where the rule on the subject was adopted as it is stated in a standard treatise:

"In order to charge the landlord the nuisance must *necessarily* result from the ordinary use of the premises by the tenant, or for the purpose for which they were let; and where the ill results flow from the improper or negligent use of the premises by the tenant, or, in other words, where the use of the premises may or may not become a nuisance, according as the tenant exercised reasonable care, or used the premises negligently, the tenant alone is chargeable for the damages arising therefrom." [2 Wood on Landlord & Tenant (2 Ed.), p. 1283.]

The inference that the quarry on Deitz hill could not be worked without danger to persons and property as far away as Southwest Boulevard, is deducible from the facts in proof; and as there was testimony to show the danger was continuous, or at least occurred at intervals for a considerable period, the work was, in the strict sense of the word, a nuisance; for it disturbed persons who dwelt within range of the blasts in the quarry and also persons on the boulevard in the exercise of the common right to travel there. [Pollock on Torts

(6 Ed.), 385; Tiffany on Landlord & Tenant, sec. 102, p. 681.] And it was a jury matter whether a nuisance would necessarily arise from the work, as there were facts in evidence to prove the quarry could be worked without risk to the neighborhood; also that before the day of the accident no debris had been thrown as far as the boulevard. [Prussak v. Hutton, 51 N. Y. Supp. 761; Fish v. Dodge, 4 Denio, 311.]

Therefore the question for decision here is whether there is evidence to prove John Spitcaufsky, or any one **Trespasser.** else for whose conduct the lessor Gates was responsible, was operating the quarry and thereby maintaining the nuisance at the time plaintiff was hurt. It is asserted Spitcaufsky was working the quarry on that day, either by and for himself exclusively, or in conjunction with Jones, the receiver, and that because of Spitcaufsky's separate or joint charge of the work, he caused plaintiff's hurt, and Gates, who authorized the work, is answerable too. Attentive study of every item of evidence to warrant a finding that Spitcaufsky was wholly or partly in charge of operations when the accident happened, have satisfied us there was no evidence tending to prove he was. The case made by the petition is that the receiver was in charge and control on that day and long prior thereto, and that Spitcaufsky was aiding, guiding and directing the work as the receiver's agent, instead of in his individual capacity. Several witnesses testified to seeing John Spitcaufsky about the quarry on and prior to the day of the accident, giving orders and directing the work, but there is nothing in this inconsistent with the averment of the petition that Spitcaufsky was acting as Jones's agent, or contradictory of the testimony of the receiver that he was operating the quarry and had been in charge since June 13th, nearly two months before the date of the accident. It is said the petition filed by the appellants as executors of the lessor to remove the cloud of the lease from the title, shows Spitcaufsky was in possession of the hill or in charge of the work on

41—279 Mo.

it on August 4, 1914, and long after. We have quoted the only passage of that petition which refers to what Spitcaufsky was doing or claiming, and it has no tendency to prove Spitcaufsky was working the quarry when the accident occurred, or later, but only that he claimed an interest and right of possession.

The receiver was not operating there with the consent of Jemuel Gates or the appellants, and so testified. Besides, a notice had been served on him July 8, 1914, by Jemuel Gates that he was trespassing on the leased premises and to desist from taking rock from them. It might be deduced from circumstances in proof, although there is no direct testimony to that effect, that Spitcaufsky Construction Company had been operating the quarry under a contract with John Spitcaufsky, the lessee, as provided in paragraphs one and four of the lease agreement, and that Jones, having been appointed receiver in bankruptcy of said company, took over the work. If Spitcaufsky had contracted with the Construction Company to take rock and dirt from the hill, a contract authorized by the lease agreement, the lessor would have been as responsible for an injury done while the Construction Company was in charge as for one caused by Spitcaufsky himself. But the relation of lessor and lessee did not exist between Gates and the receiver, and no fact appears to indicate that the receiver was working the quarry under authority from Gates as licensee. The lease agreement will not bear the interpretation that Gates was responsible for the torts of a possible receiver in bankruptcy of some person or company whom Spitcaufsky might employ. Whatever right, if any, Jones possessed to conduct the quarry, he got from the court which appointed him. This is by the way, for it is not contended for respondent, that Gates was answerable for the receiver's torts, the argument being that there is evidence to support an inference that Spitcaufsky was doing the work. We hold there was none to show he was doing it, except as agent or employee of the receiver. Spitcaufsky might be liable as a joint tort-

feasor for any injury done while thus acting, and that is the theory of the petition; but Gates as lessor would not be answerable for Spitcaufsky's acts while in the employ of a person who had no authority, direct or indirect, to work the quarry.

The judgment is reversed and the cause remanded, with directions to set aside the order sustaining the motion for new trial and to reinstate the verdict for appellants and render judgment thereon. All concur.