BERTHA E. ROMBAUER, SOPHIE M. ROMBAUER, AND IRMA R. TUFTS, APPELLANTS, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, A CORPORATION, RESPONDENT.—34 S. W. (2d) 155.

St. Louis Court of Appeals. Opinion filed January 6, 1931.

*Thompson, Mitchell, Thompson & Young* and *W. K. Koerner* for appellants.

*E. T. Miller, A. P. Stewart* and *C. H. Skinner, Jr.,* for repsondent.

BENNICK, C.—This is a suit by plaintiffs to enjoin defendant railway company from permitting its right of way at a point at or near Brickey's Landing, in Ste. Genevieve County, Missouri, to be used or occupied as a place of permanent residence for its employees, and from maintaining certain bunk houses thereon. The decree of the lower court was for defendant, dismissing plaintiffs' bill; and from the judgment entered, plaintiffs have duly appealed.

There is no question about the form or sufficiency of the pleadings in the case; and in the light of our previous statement of the purpose of the suit, the point at issue may be fully determined from a recital of the facts, about which there seems to be no dispute.

Plaintiffs are the owners of a large body of land in and about the settlement known as Brickey's Landing; and upon a portion of the land, and in the immediate vicinity of the village, they have a number of buildings, some of which are used for business purposes, and others for residences. Across plaintiffs' land extends the right of way of defendant railway company, running generally north and south, with high bluffs to the west of and very close to the main line, and with the Mississippi River immediately to the east.

About 3,000 feet west of the main line, near where it passes through the village, are certain lime kilns and a rock quarry, all situated upon plaintiffs' land. In 1907, plaintiffs' predecessor in title, the Cliffdale Land & Farm Company, executed to defendant's predecessor in title, the St. Louis, Memphis & Southeastern Railroad Company, a deed conveying to the latter a strip of land for right of way purposes, extending from a point on the main line to the lime kilns and quarry. The construction of the *habendum* clause of such deed is the point at issue between the parties, the clause reading as follows:

"To Have and to Hold the above described premises unto the said Railroad Company, its successors and assigns, as and for a railroad right of way, and for all purposes incidental to or connected with the maintenance and operation of a railroad, and whenever abandoned for that purpose, the said premises shall revert to the Grantor herein. its successors and assigns."

The strip of land in question is approximately 3,063 feet in length, and for the most part fifty feet in width, though there are some portions where the width is as much as 100 feet; and its course is an irregular curve. Shortly following the execution of the deed, a spur track was constructed upon the right of way so granted, and such track has been coontinuously used for railroad purposes from that day to this.

In 1925, within the limits of the right of way, and at a point 600 feet distant from the main line, defendant placed two bunk houses, which were formed of box cars from which the wheels and trucks had been removed, and which were then laid upon sleepers or other suitable foundation. Each of the cars is divided into three rooms, and ever since they have been thus laid down, they have been occupied by those of defendant's section hands who were employed upon that particular section of the road. At the time of trial, one of the houses was occupied by a family of three, and the other by a man alone. It was shown, however, that on occasions in the past, they had been occupied by larger families; that at one time several Mexicans in the employ of the defendant had lived in one of the houses; and that the occupants had all the while had the usual visits from friends and relatives.

Defendant's evidence in justification of its action was that rocks and earth often fell from the high bluffs down upon the main line immediately beneath, and that earth would occasionally fall or slide from the roadbed upon which the main line was constructed; that in order to patrol and maintain its tracks properly, it was necessary to have experienced and dependable section men living close at hand so that they could respond promptly in case of an emergency; that by reason of the close proximity of the lime kilns aand quarry, which paid higher wages than defendant's section hands received under the national wage agreement, it was difficult for defendant to secure and retain capable, reliable, and efficient men for its work; and that in order to induce its section men to remain in its employ, it had arranged to provide the bunk houses in question, which it furnished to them for living quarters without the payment of rent.

It was also shown that at other locations along its line, defendant maintained similar bunk houses, though as a general rule it did not provide its section men with free living quarters; and it perhaps should be added further that there was no testimony tending to show any improper conduct on the part of those occupying the houses at the time of the trial.

Plaintiffs make the usual assignments of error for an appeal in an equitable proceeding, namely, that the court erred in dismissing their bill; in making a finding and in rendering judgment for defendant; and in failing to enter a decree for plaintiffs, granting them the relief prayed for in their petition. More specifically, their

point is that under the grant of the right of way involved in this suit, defendant acquired only an easement, and that such easement did not include the right of defendant to construct and place permanent residences for its section men upon the land affected thereby.

That it has only an easement in the land, even though its right of way was acquired by deed from the owner of the fee, is not controverted by defendant; but it does argue most earnestly that in placing the two bunk houses upon the right of way for the use of its section men, it was acting clearly within its rights, both under the terms of the deed in question, and also under its charter or statutory powers.

Though this seems to be the first case of its kind in our own State, the rule of law involved has been frequently discussed from various angles in neighboring jurisdictions. Broadly speaking, it may be said that a railroad company's right of way is held for use for railroad operating purposes, or purposes incidental thereto (City of Sturgeon v. Wabash Ry. Co. (Mo. App.), 17 S. W. (2d) 616); but perhaps a more accurate statement of the rule would be that except to the extent that a railroad company is restricted by the terms of the grant to it, or by its charter or governing statute, the land or right of way acquired may be used for any legitimate, incidental purpose that is reasonably necessary or convenient to the construction, maintenance, and operation of the railroad. [51 C. J. 568, and cases cited.]

Furthermore, the question of whether or not a use or proposed use of its right of way by a railroad company is necessary for railroad purposes is, primarily at least, a matter to be determined by the company itself in the exercise of its judgment, so that in the absence of a showing that the use and occupancy is not necessary for railroad purposes, and that such use is in bad faith and not the result of the honest exercise of the company's judgment, the courts will be reluctant to interfere therewith. [Hodges v. Atlantic Coast Line R. Co., 196 N. C. 66, 144 S. E. 528; 51 C. J. 570.]

Interesting cases illustrative of the particular uses to which railroad property may ordinarily be put as against the objection of the owner of the fee are to be found collated in 51 C. J. 569, 22 R. C. L. 863, and 36 L. R. A. (N. S.) 512. For the most part such cases go to the right of the company to erect and maintain depots, warehouses, water tanks, side tracks, switches, turntables, and the like. The only case that we have found directly in point upon the facts involved in this proceeding is Hodges v. Atlantic Coast Line R. Co., supra, wherein it is held that since it is the duty of a railroad company to keep its roadbed and tracks in good repair, and since it is necessary for the company to keep section men in its employ and have them readily available for the performance of such duty, it cannot be said as a matter of law that the erection of houses and shanties

upon the right of way for the use and occupancy of the section·men is not reasonably necessary for railroad purposes.

Thus we have ample authority for the conclusion that defendant's act in placing the two bunk houses upon the right of way in question was reasonably necessary for and incidental to railroad purposes so as to take the case without the pale of injunctive inhibition, unless it should be that the company was restricted by the provisions of the governing statute, or by the terms of the deed which was executed to its predecessor in title.

There is no controversy over defendant's right under the statute (Section 3850, Revised Statutes 1919) to maintain the bunk houses, since such statute broadly confers upon all railroad companies the general right to take and hold voluntary grants of real estate and other property as shall be made to them to aid in the construction, maintenance, and accommodation of their lines, and to erect and maintain all necessary and convenient buildings, stations, fixtures, and machinery for the accommodation and use of their passengers, freight, and business. Rather it is the contention of plaintiffs that the inhibition is to be found in the terms of the deed itself, which, being a written instrument, is obviously to be construed so as to ascertain and give effect to the real intention of the parties as expressed therein.

Of course the authorities are all of one accord that where a right of way is granted by a deed specifically defining and limiting the easement granted, the railroad company can acquire no greater right or interest in the land, or subject it to a more extensive easement or a heavier burden, than is passed or, authorized by the deed. In other words, if the grant or conveyance contains words of restriction and limitation to the clear effect that the right of way granted thereby shall be used only for certain specific railroad purposes, it can lawfully be used only for those purposes which fall within the scope of the provision, and for none other. [51 C. J. 571; 22 R. C. L. 868.]

Plaintiffs rely upon cases expressive of this rule, where the limitation in the deed was so definitely worded as to permit of no doubt about what the intention of the contracting parties was. For instance, their authorities turn upon such points as that where a right of way is granted as subsidiary to mining rights, that is, for the transportation of particular minerals, the same may not be employed for the general business of carrying freight and passengers; or that where the easement limits the use of the land to purposes incidental only to the portion of the line to be built thereupon, materials suitable for the construction and maintenance of the railroad generally may not be removed from the land and be used upon any other part of the road. Still more closely in point, though not cited in the briefs, is the case of Grubbs & Kirk v. Louisville & N. R. Co. (Ky.), 123

S. W. 1195, where the deed provided that the company should erect no shanties or like houses upon the land, and the court at once held that such provision was definite, and subject to enforcement.

With no such limitation fixed in the deed in controversy as there was in the Grubbs case, and in view of the very liberal interpretation which the courts have uniformly given the question of what are reasonable railroad purposes, plaintiffs seem not to take issue with the right of defendant to have placed the bunk houses upon the right of way over which its main line extended, had space permitted, and had it so desired. It was there where the emergency primarily existed, and where the work of repairing the track was principally to be done. It must be borne in mind, however, that the location of the bunk houses was not the main line, but alongside the spur track; and consequently plaintiffs argue that it was not in the contemplation of the original parties to the deed that the spur-track right of way should be used as a place of permanent residence for general railroad employees.

Undoubtedly the prime intent of the original parties was to secure a spur track to serve the lime kilns and quarry situated some distance away from the main line, as counsel suggest; but it does not follow from this that they wrote the limitations into the deed for which plaintiffs now contend. It would be difficult to imagine a broader and more general grant than that contained in the deed in question. It authorized the company to have and to hold the land as and for a railroad right of way, and for all purposes incidental to or connected with the maintenance and operation of "a" railroad. It will be observed that it did not limit the company to uses incidental to the operation of "this" railroad, or "said" railroad, as it might have done; nor did it even restrict the company to purposes wholly connected with the operation of the particular industries which it was built to serve. As a matter of fact, it is to be presumed that the section men kept the spur track, as well as the main line, in a state of repair; and indeed it might well be argued that proper and adequate service to the industrial plants located along the spur track required that the main line itself be kept open and available for traffic.

The maintenance of the bunk houses was a reasonable railroad use under the evidence in the case and in the light of the authorities, and there is no statutory inhibition against the same. When we look to the deed to ascertain the intention of the contracting parties, we find a broad and general grant, with no limitation upon the company's use of the land except that it must be for purposes incidental to or connected with the maintenance and operation of a railroad, of which the use in question was one. Consequently, we agree with the lower court that the case does not warrant the relief which plaintiffs seek, and that their bill should be dismissed.

It follows, therefore, that the judgment of the circuit court should be affirmed, and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly affirmed. *Haid, P. J.,* and *Becker* and *Nipper, JJ.,* concur.