**David G. REECE and Elsie H. Reece, Respondents,**

**v.**

**Estella A. VAN GILDER, Appellant.**

**No. 22271.**

Kansas City Court of Appeals.

Missouri.

June 6, 1955.

Wallace Cooper, St. Louis, Garrett R. Crouch, Warrensburg, for appellant.

Gayles R. Pine, John H. Mittendorf, Warrensburg, for respondents.

DEW, Presiding Judge.

Plaintiffs brought this action for restitution of certain moneys expended by them for payment of a mortgage, interest, taxes, labor and building materials under an alleged oral contract with the defendant, and for an equitable lien on defendant's land to secure payment of the amount so recovered. Plaintiffs have rescinded the contract, claiming a breach thereof by the defendant. The court found plaintiffs were entitled to recover $4,107.99 for moneys advanced, decreed an equitable lien upon defendant's land to secure payment thereof, adjudged the plaintiffs a life estate in a dwelling house built by plaintiffs on defendant's land, and decreed certain other relief. Defendant has appealed.

Upon the appeal of this case to this court we deemed the jurisdiction thereof to be vested in the Supreme Court of Missouri and caused it to be so transferred. Reece v. Van Gilder, 264 S.W.2d 893. The Supreme Court, however, ruled that the jurisdiction was properly in this court and retransferred it. Reece v. Van Gilder, 272 S.W.2d 177. In our first opinion we recited facts in the case so far as necessary for the consideration of the question of jurisdiction, which statement the Supreme Court accepted as correct and quoted the same in *haec verba*. We repeat that statement for reference in the present consideration of the merits.

"Plaintiffs, David G. and Elsie H. Reece, husband and wife, sued defendant Estella A. Van Gilder. They al-

leged the making of a verbal contract with defendant whereby plaintiffs agreed to expend large sums of money on defendant's 320 acre farm, as follows: To pay off a mortgage, interest, and back taxes thereon, to build a house, to furnish money for farm operations and supplies, and to furnish labor and personal services; that in consideration therefor defendant verbally promised to convey to them and defendant a fee-simple title to said 320 acre farm by joint deed, with right of survivorship among them. They further alleged plaintiffs' compliance with the terms of the contract; that defendant had breached same; that plaintiffs elected to rescind; and that they had no adequate remedy at law.

"The prayer was 'for this court of equity to grant to plaintiffs * * * a special lien against the above described real estate for all the amounts found due plaintiffs and expended by them on said premises * *. *, amounting to the total sum of $13,425.55, * * . *, and that said special lien be ordered foreclosed and said real estate sold for the payment of said lien * * * and for such other and further relief, *. * * as to the court shall seem meet and proper in the premises.'

"Defendant answered admitting that plaintiffs paid off a certain mortgage, in the amount of $3,000, together with interest, but alleged that they did so solely as volunteers and not pursuant to any contract, but as a gift to defendant; admitted that plaintiffs had constructed a house on the premises but did not know the amount paid out by them in that behalf, and alleged they did so under a contract whereby the house was to become part and parcel of the real estate, with privilege to plaintiffs to live in same for and during their natural lives; denied that plaintiffs had performed labor of the value of $3,000, as alleged by plaintiffs, or of any other value; denied that they had advanced or paid $600 cash in addition to the

above sums; and prayed that the petition be dismissed and defendant adjudged to be the absolute owner of the real estate described therein, subject to the right of plaintiffs to occupy the house during their natural lives.

"This is an equity case, Goldman v. Ashbrook, Mo.App., 262 S.W.2d 165, 168; and, on appeal we consider it *de novo,* make our own findings of facts and conclusions of law, and render or direct the rendition of such judgment as equity and justice may require. Maas v. Dreckshage, Mo.App., 244 S.W.2d 397, 400.

"The evidence tended, generally, to support plaintiffs' compliance with its terms, defendant's breach, and that plaintiffs expended cash sums under said contract, in excess of $7,500.

"The court found, adjudged and decreed as follows:.

"'1. That plaintiffs advanced to defendant the sum of Six Hundred ($600.00) Dollars in cash, and that plaintiffs paid the sum of Two Thousand and Seventy-Five ($2075.00) Dollars on May 5th, 1949, and One Thousand and Twelve Dollars and Fifty cents ($1012.50) on June 19th, 1950, to the Farmers Commercial Bank of Holden, Missouri, to discharge and satisfy deed of trust upon the real estate described in plaintiffs' petition and situate in Johnson County, Missouri, to-wit:

"'The West Two-thirds (W ⅔rds) of the East Three Fourths (E ¾ths) of Section Nine (9), Township Forty-four (44), Range Twenty-eight (28), all in Johnson County, Missouri; that plaintiffs are entitled to a lien upon said real estate for said sums totaling Three Thousand, Six Hundred and Eighty-seven Dollars and Fifty Cents ($3687.50), with interest on Two Thousand and Seventy-five ($2075.00) Dollars at Five (5%) per cent from June 19th, 1950, making the total sum as of this date of Four Thousand, One Hun-

dred and Seven Dollars and Ninety-nine Cents ($4107.99) due the plaintiffs herein.

" '2. That the plaintiffs are entitled to a life estate for the lifetime of both of them in and to the dwelling house constructed by plaintiffs upon the above described real estate, with rights to an easement for plaintiffs lifetime to the use of water from the well where defendant resides, and to pump or pipe the same from said well to plaintiffs' residence on said premises.

" 'It is therefore ordered, adjudged and decreed by the Court that plaintiffs have and they are hereby adjudged and decreed to have a special lien upon said described real estate for the sum of Four Thousand, One Hundred and Seven Dollars and Ninety-Nine Cents ($4107.99) and plaintiffs are hereby granted a life estate in and to the dwelling house erected upon said premises by plaintiffs, and plaintiffs are hereby granted an easement over and along said premises from said dwelling house to well at the residence of defendant on said premises for water rights for the purpose of laying pipe therefor, and to use water from said well during the lifetime of the plaintiffs; that a special execution issue out of this Court for the purpose of foreclosing and satisfying said special lien of plaintiffs on said real estate, and that said real estate be sold by the Sheriff of Johnson County, Missouri, under special execution for the purpose of paying and satisfying said lien, and the costs of this action, said costs being taxed against the defendant.' "

According to the evidence produced by plaintiffs, David G. Reece was, at the time of trial, 73 years of age, and Elsie H. Reece, his wife, was 71. They had lived for many years in Independence, Missouri, and while living there they became neighbors of and intimately acquainted with the defendant and her husband Lloyd Van Gilder. They belonged to the same church. Later, after defendant and her husband moved to other counties, the two couples continued their close friendship and visited back and forth. Plaintiff Elsie Reece had two adult children by a former marriage living in a distant state, but she and plaintiff David G. Reece had no children by their marriage. Defendant had four children living, ranging in ages from 9 to 16 years, at the time of the alleged agreement in question. Defendant was considered by the plaintiffs in the nature of a foster daughter and she called plaintiff David G. Reece "Dad" and her children were taught to call the plaintiffs "Grandpa" and "Grandma".

Defendant and her husband Lloyd Van Gilder acquired and moved to a 320 acre farm in Johnson County, Missouri. The parties still continued friends. Defendant later started divorce proceedings against her husband, and plaintiff Elsie Reece visited defendant pending the case. Defendant asked her on that occasion if, in case defendant obtained a divorce, plaintiffs would "finance the place for her". Mrs. Reece told her they would do so on the terms they had previously discussed, that is, "we would come down there and build a house and we would all live in it as one family, and we would pay the mortgage * * *"; that the parties would "share and share alike" on the place, the defendant to take care of the plaintiffs, and if one of the plaintiffs passed away, defendant was to look after the other. Plaintiff Elsie Reece was asked what defendant said regarding such a proposition and she answered:

"A. She said that was all right, that she was willing to accept the deal that way and we would share and share alike on the place.

"Q. What, if anything, was said about the title to the farm? A. She and Mr. Reece talked more about the title than I did. * * *

"Q. Now Mrs. Van Gilder agreed to take care of your husband and you if you got to where you couldn't take care of yourselves? A. That was the agreement".

Mrs. Reece said that after the divorce plaintiffs paid the mortgage and taxes and began the building of the house on defendant's farm. She testified as to the amounts so furnished and advanced to the defendant. She repeatedly asked defendant for "papers for the place", but was always put off by the defendant.

Plaintiff David G. Reece testified that he had often expressed to the defendant his desire to move out of town and to spend the rest of his life in quieter surroundings. He said that defendant talked with him about an agreement and "She said if we would come down here and pay off the mortgage and the back taxes that were against the place, she would make us a deed for a half interest, or 50–50 basis on the farm." However, he did not recall just how the papers were to read as to title. The new house was to belong to the defendant at the death of the plaintiffs. The defendant went with him to the bank and he paid $2,000 on her mortgage and interest and taxes to date. He started building the house and worked on it about one year, meanwhile living in the home of the defendant. Defendant's two sons helped somewhat in the construction. Defendant participated in locating the site of the house and made suggestions as to plans. He later paid the remaining $1,000 on the mortgage with accrued interest, obtaining the note endorsed to the plaintiffs. Witness also bought a truck, which the defendant used exclusively.

While the new house was being constructed by plaintiffs, defendant married a tenant of a part of her farm, C. C. Highley, and she and her new husband remained in the old house. Her attitude changed toward the plaintiffs. She refused to have the plaintiffs take part in the farming operations or in the profits therefrom. She refused to give plaintiffs any deed or papers which would in any way show the interests of the plaintiffs. She refused to permit the plaintiffs to attach water pipes and pump to the well, which was the source of water for the two houses. He was forced to haul water. Plaintiffs have finished the first floor of the house, but not the second floor. The windows upstairs are boarded up, and no furnace has been installed.

Defendant testified that shortly after her divorce, she visited the plaintiffs in Independence, and one of them said: "If it was suitable with us, I don't remember which one said that, but they said if it was suitable they would come and build a house, —that was the conversation. I don't remember it word for word just what was said"; that they wanted to pay the mortgage so the bank wouldn't foreclose on her farm; that she told them that she had arranged the loan with the bank, and was not worried about a foreclosure; that she told them she wanted her children to have the farm when she was through with it; that she later went with Mr. Reece to the bank when he paid $2,000 on the mortgage, with interest, where he told the president of the bank that he wanted to "help me and my children". She said Mr. Reece then also deposited $400 for her to check on, which was largely used up in special food for Mr. Reece while building the new house; that Mr. Reece also paid all the taxes to date; that she learned from plaintiffs' petition that Mr. Reece had paid the remaining $1,000 on the mortgage; that there was never any agreement about any deed. She denied that she had prevented Mr. Reece from using his truck, which she had used a few times at her expense. She denied that Mr. Reece had ever completed his pump, or could have gotten water even if electrical connections had been made. She reiterated that she was always ready and willing to help care for the plaintiffs if necessary, but they did not seem to welcome her presence. At the close of the plaintiffs' case, the court, over the objection of plaintiffs, permitted defendant to amend her answer by pleading the Statute of Frauds.

Defendant's first three points of error are based on the contention that the oral contract alleged by the plaintiffs affected real estate, and to be enforceable in equity as an exception to the Statute of Frauds, the burden is on plaintiffs to prove it beyond a reasonable doubt, which, it is

claimed, they failed to do; that not having appealed herein, the plaintiffs are concluded by the trial court's finding that the agreement was that plaintiffs were to have a life estate in the house built by them on defendant's land in accordance with defendant's contention, and that jurisdiction is in this court on appeal. The defendant cites numerous cases stating the rule of the burden of proof where oral agreements coming within the scope of the Statute of Frauds are sought to be enforced as exceptions to the statute. However, every case cited was an action for specific performance of such a contract. In the instant case, the plaintiffs did not seek performance of the alleged agreement, but rescinded it and sought restitution for moneys and labor expended to defendant or for her benefit in reliance upon it. Even if the contract was unenforceable by reason of the Statute of Frauds, it was not thereby void, but voidable only. The statute affects the remedy only. Huttig v. Brennan, 328 Mo. 471, 41 S.W.2d 1054. Furthermore, the court did not allow the plaintiffs any share in the title to the real estate of the defendant. Not having appealed, plaintiffs cannot now assert any claim to a share in the title of defendant's farm. As to jurisdiction of this appeal, that has been determined by the Supreme Court, as stated.

■■ Defendant's fourth point is that even if the agreement extended to the other matters claimed by the plaintiffs, they have no right to rescind, as they were in default of such alleged contract, and she points out that there was no evidence that plaintiffs supplied any funds for machinery, seed, livestock or other farm necessities, except for 40 rods of fence wire, nor did they complete the new house, as agreed, nor did they prove they were prevented from occupying the new house, or were refused care when needed. However, there was substantial evidence that defendant did agree to execute the necessary instruments of conveyance that would manifest the plaintiffs' interest in the house, and that she would afford them privileges. of water connection with the well located on the farm, and would look after the plaintiffs

when needed, and that the plaintiffs had meanwhile paid off her mortgage deed, with interest, and taxes accrued, and were building the house. There was evidence that she had refused to execute any papers of conveyance, as agreed, or to allow the water connection agreed upon. In this conflict of evidence, we defer to the findings of the trial court and hold that the plaintiffs were not in default of their agreement although they were prevented from completely performing their covenants by the defendant's breach of the contract. In such a situation, the plaintiffs could elect to rescind their agreement and seek restitution of funds and labor furnished the defendant thereunder. Maas v. Dreckshage, Mo.App., 244 S.W.2d 397, 402; Williston on Contracts, Vol. II, p. 1546, Section 534; Corbin on Contracts, Vol. 5, p. 472, Section 1106, and page 478, Section 1108; American Juris, Vol. 49, page 862, Section 556; 37 C.J.S., Frauds, Statute of, § 256, p. 778; Davis v. Falor, 346 Mo. 514, 142 S.W.2d 76.

■ Defendant for her fifth point, contends that since plaintiffs accepted the benefits of a part of the alleged contract, they cannot rescind as to another part, and recover restitution of part of the consideration paid for the whole contract. It is settled law that a party cannot rescind a contract in part and affirm it in part. "He cannot accept its benefits on the one hand, while he shirks its disadvantages on the other." Schurtz v. Cushing, 347 Mo. 113, 119, 146 S.W.2d 591, 594; Restatement on Contracts, Section 353. It must be noted, however, that in the instant case, plaintiffs did not seek the performance of any part of the alleged contract, but rescinded the contract as a whole, asking for a restitution of all moneys and value of the labor expended thereunder and for an equitable lien for such recovery, and other relief. The defendant's answer sought to have her title declared clear of all of plaintiffs' claims, except, specifically, plaintiffs' life estate in the new house, and for general equitable relief. The court's decree, in accordance with the request of both plaintiffs and defendant for full equitable relief, gave the plaintiffs such life estate in the house on

defendant's land. If such part of the decree is inconsistent with the plaintiffs' petition, defendant cannot question it since by her answer she admitted her agreement for such life estate and requested the decree to show her title to be subject thereto.

■ Defendant's sixth point is that plaintiffs have no right to rescind because of their delay in so doing, and hence they are unable to restore the defendant to her original position. There was substantial evidence that after plaintiffs had paid off defendant's mortgage on her land and all taxes and interest accrued, and when she was fully aware that plaintiffs were building a dwelling house on her land which would become a part of her real estate, and after plaintiffs had repeatedly requested of her some conveyance in writing as evidence of their interest in the house, she persisted in postponing the execution of any papers for that purpose. There was no showing that she was harmed or misled by the plaintiffs' delay in their rescission of the contract. Restatement on Restitution, Section 148(c). Plaintiff David Reece was engaged throughout 1949 and most of the summer of 1950 in building the house, and having paid defendant's mortgage and taxes, had a right to believe defendant would perform her contract prior to the bringing of this action in October, 1950. Neither was there anything for the plaintiffs to restore to the defendant as she had benefited by the mortgage payments, tax clearances and the improvement to her land, and after plaintiffs' rescission there was nothing that might be restored to her, save possession of the house to which she admits she is not entitled.

For her seventh point defendant asserts that even if she had agreed to divide the profits of the farm 50–50 with the plaintiffs, as claimed, her breach thereof, if any, would not go to the root of the contract and would not afford plaintiffs ground for rescission, their remedy in such case being an action for accounting, if any. Suffice it to say, the court did not allow plaintiffs any part of the profits and it must be presumed that it concluded defendant had not agreed to such share and therefore had not breached any agreement to do so. Since plaintiffs did not appeal, their right to an interest in such profits, by reason of their rescission of an agreement therefor has been denied them and is no longer an issue.

Defendant next contends, in effect, as her eighth point, that even if she did agree to divide the profits of the farm, the plaintiffs proceeded to build the house after payment of the final $1000 on her mortgage, despite her alleged breach of the contract and thus waived such breach, constituting such payment as voluntary and depriving plaintiffs of any right of restitution as to such post-breach performance. As heretofore stated, the court, in effect, ruled that plaintiffs are not entitled to a share of the profits and that there was no agreement therefor.

■ As her ninth point of error defendant claims that the contract, as alleged by the plaintiffs, would have been unfair and unconscionable,—one which would not be enforced in equity. Assuming defendant's premise, we note that she cites no authorities, and we find none, to support a contention that when an oral agreement has been breached by a party to whom it is unfair and unconscionable, it cannot be rescinded by the other in an action for restitution of funds paid by him to the complaining party. If such were the law a transaction might become mutually unfair and unconscionable, if unenforceable in equity, and might result in unjust enrichment. The authorities we have cited support such right of rescission and restitution when contracts are merely unenforceable.

■ Defendant's final point is that the evidence does not support the court's finding that plaintiffs advanced $600 in cash with the expectation of being repaid therefor, or as a part consideration for the agreement between the parties. The appellant testified that Mr. Reece deposited $400 to her account on the day he paid $2,000 on the mortgage May 5, 1949, as a part of their agreement about the house. She also testified he gave her $100 at another time, while he was staying at her home during the construction of the new house, advising her not to borrow at the bank. It is true she said this amount was largely used for

Mr. Reece's special food and for domestic purposes. Mrs. Reece identified another item of $100, paid by Mr. Reece to "Stella" on July 25, 1949, shown on her daily account, as well as other items of cash in small amounts, and clothing. The court properly considered this evidence as sufficient evidence of the $600 found by the trial court to have been advanced in addition to the mortgage, interest and taxes.

Finding no error in the trial, materially affecting the merits, the judgment and decree are affirmed.

BROADDUS, J., and ROSE, Special Judge, concur.