**MISSOURI–KANSAS–TEXAS RAILROAD COMPANY, Plaintiff-Appellant,**

v.

**V. R. FREER, Defendant-Respondent.**

**MISSOURI–KANSAS–TEXAS RAILROAD COMPANY, Plaintiff-Respondent,**

v.

**V. R. FREER, Defendant-Appellant.**

Nos. 7713, 7717.

Springfield Court of Appeals.

Missouri.

Dec. 9, 1958.

Motion for Rehearing or to Transfer to the Supreme Court Overruled

Feb. 7, 1959.

William A. Thie, Denison, Tex., Mc-Reynolds, Flanigan & Flanigan, Laurence H. Flanigan and John H. Flanigan, Carthage, for plaintiff.

Max A. Patten, Joplin, for defendant.

RUARK, Judge.

*Injunction:* Plaintiff railroad sued to restrain defendant, owner of land adjoining its right of way, from an alleged trespass on such right of way. The petition alleges that plaintiff railroad is the owner of a 100-foot wide easement across the land of defendant; that along the whole of such strip it maintains a pole and wire line which is an integral part of plaintiff's railroad system; that along a *portion* of the strip it maintains track for the movement of its trains; that defendant has laid a girder across part of the strip and is threatening by the installation of girders and fences to prevent plaintiff, its shippers and consignees, from using the strip for unloading and temporary storage of materials carried in the exercise of its railroad business. Prayer is for injunction to prohibit defendant from interfering in any manner with *the free and unrestricted use of such strip* by plaintiff, its shippers and consignees.

Upon the filing of the petition the court issued its temporary injunction enjoining defendant:

(1) From trespassing and entering upon plaintiff's 100-foot wide strip.

(2) From interfering with the possession and use of said strip by plaintiff, its shippers and consignees.

(3) *From installing or maintaining any fence or barriers in, across, or upon the strip.*

(4) From interfering in any manner whatsoever with the enjoyment of plaintiff, its shippers and consignees, of the free and unrestricted use of said strip.

Defendant answered, among other things, that plaintiff had removed and abandoned the roadbed on the portion of the strip involved. He asserted that "the only possessory right of the plaintiff to said strip is to maintain a roadbed and to move its trains" and that defendant is restricted in using the strip himself only to the extent that he does not interfere with such maintenance of roadbed and movement of trains; and he denied such interference. By way of counterclaim defendant asserted that the plaintiff's easement rights are limited to those acquired by a grant which reserved unto the grantor certain *mining rights* on the right of way and the doing of certain related acts, such as building trams, sinking shafts, building ponds, et cetera; that plaintiff has leased a portion of the right of way to a business which we will call "Sumners and Moore" to conduct a private business for profit by the maintenance of a concrete plant and the storage of chats and materials, the portion so leased being that from which plaintiff had removed its roadbed and rails; that Sumners and Moore now occupy such leased tract for such purpose; that such leasing interferes with the possessory rights of defendant. The counterclaim prays for an injunction against plaintiff and its lessees from entering upon the strip "except according to the terms of the right of way deed aforesaid" and that plaintiff be enjoined from leasing any portion of the right of way to any person for private

profit "or from performing on said property any act * * * except for the maintenance of a roadbed for the movement of cars."

Trial was commenced on the issue of defendant's motion to dissolve the temporary injunction, but this hearing was, by stipulation, transformed into a trial on all the merits. The court rendered judgment by which paragraphs 1, 2, and 4 of the temporary injunction were dissolved and paragraph 3 was left in force. This was not satisfactory to either party, and both parties filed motion to set aside or for new trial. Thereupon the order was set aside and the cause was set for further hearing. On January 20, 1958, plaintiff filed motion for permission to amend its reply by pleading a Joplin city ordinance which prohibits mining within the city limits, and this was overruled.

On January 29, 1958, judgment was rendered wherein the court found that plaintiff has a right of way; that the easement still exists and no part of it has been abandoned; that defendant has the right to enter upon the tract for mining purposes and to do certain designated things in conducting such mining operation but has no other or further right to enter upon the premises; that plaintiff has no right to use or to permit the use of the right of way in any manner which interferes with defendant's mining rights.

The defendant was enjoined (during the existence of the easement) from installing any fences or barriers on the right of way and from making any use of it which interferes with plaintiff's use as a right of way except in the exercise of his mining reservations.

The plaintiff was enjoined from any use of the right of way which interferes with the right of the defendant to enter and exercise his mining rights as reserved in the recorded grant.

Plaintiff filed motion to modify by restoring paragraphs 1, 2, and 4 of the temporary injunction or, in the alternative, for a new trial. Defendant filed motion for new trial. Said motions being denied, both parties appealed.

■ In case number 7717 the defendant has failed to complete his appeal by the filing of transcript and serving of briefs, and the same is now dismissed in accordance with Supreme Court Rule 1.15, 42 V.A.M.S. The case for decision on the merits is case number 7713 on plaintiff's appeal.

### The Facts

Defendant owns a tract which extends an east-west distance of 667 feet. The strip or "right of way" enters this tract near the northwest corner and extends, upon a slight curve to the south, across the entire breadth of the tract. In 1902 the Empire Zinc Company, defendant's predecessor in the chain of title, conveyed to Missouri, Kansas and Northwestern Railroad Company, plaintiff's predecessor, "a right of way for the railroad about to be constructed," a "strip belt or piece of land" fifty feet on each side of a staked line across the premises. The consideration was one dollar and the change of location from the south side to the north side of the then smelter plant of the grantor, "and if said plant shall be operated hereafter at any time said railroad company shall promptly furnish cars and remove thereon free of charge all such cinders and clay refuse material as said first party may desire to get rid of." It was stated that the intention was to convey surface rights only for a right of way, and the grantor reserved the minerals under the surface, the right to drive drifts, build trams over the tracks in such way as not to interfere with the operation of the railroad, to build ponds, dump waste material, and sink shafts, provided that in so doing the use of the right of way be not "unnecessarily" impaired for use by the railroad company "in the maintenance of its roadbed and the operation of its trains." The railroad was required to provide for

drainage by the construction of "suitable" bridges and to build "reasonable" crossings over the tracks. The railroad was required not to build any fences on the limits of the right of way so long as the premises should be used for mining or manufacturing purposes except by consent of grantor. Finally it was stated that "the strip of land is for a railroad right of way and is to revert to grantor its successors and assigns if it be abandoned for that purpose."

A roadbed or dump was built along this right of way. At a place a short distance east of the west line of defendant's tract a trestle was built, rails were laid, and the strip was made a part of what was referred to as "the old main line" which ran into Joplin. Sometime later this old main line was "changed," but as to just when the record is silent. It is said the old trestle was taken out approximately twenty-five years ago. About 1943 the railroad took up all the rails extending easterly from the trestle a distance of 1988 feet (this would be across most of defendant's land and a considerable distance east therefrom). It is not shown who took up the 173 feet of rails lying between the west end of the old trestle and the point where the rails now end, but they appear to have been gone for approximately the same length of time. At the time the case was tried the rails ran in from the west and ended at a point approximately 29 feet inside (east of) defendant's west line. Beyond that point and continuing west, every vestige of the old roadbed is gone. The rails are no longer there, the ties have been taken up or have rotted away, the old trestle space has been filled in. It would appear by the exhibits that even the railroad dump itself has been scraped off, washed away, or eroded into nothing except an expanse of ground, chat, and weeds. Thus, and to summarize, we have the situation where plaintiff's tracks extend across the west line of and into defendant's premises a distance of 29-plus feet. Beyond that, and for a number of years, the railroad has not maintained any roadbed; but it has at all times and still

does maintain the pole and wire line along the old right of way, and this pole line is used in the railroad's general communication system. The railroad has continued to pay land right of way taxes on all the right of way and contends that it holds it for future commercial use.

Prior to the events which excited this lawsuit, the railroad had leased a portion of its right of way, *immediately west* of defendant's tract, to Sumners and Moore, who are engaged in the business of manufacturing ready-mixed concrete. For convenience in further discussion we will refer to this leased property as "Tract A." Sand and concrete-cement are consigned to said Sumners and Moore and unloaded at this Tract A. Unloading of sand is accomplished by a method whereby the sand is dumped from the railroad cars into an underneath pit and from there brought up and loaded into trucks by means of conveyor belt. As to the means of unloading concrete-cement the record is not so clear, but from the photographic exhibits it would appear that it is conveyed into an overhead tank and from there is loaded into trucks. The railroad has derived considerable revenue from the shipping of cars of sand and concrete consigned to Sumners and Moore at this place.

On June 13, 1957, the railroad leased to Sumners and Moore what we will refer to as *"Tract B."* This tract comprises 200 feet extending along the old right of way (of 100 feet) which crosses the defendant's tract. It is not contiguous with the defendant's west line, nor with Tract A (already leased to Sumners and Moore), nor with the end of the rail line which extends 29 feet into defendant's tract. It is located about where the old trestle was originally built and about 202 feet (east) from defendant's west line. The lease is terminable on thirty days' notice and its purpose is stated to be for "material storage."

Sumners and Moore have commenced operations upon this Tract B. Sand which is unloaded on Tract A is trucked down

and "stockpiled" on Tract B. Crushed limestone is purchased locally and trucked in and also piled on Tract B. A mixing hopper has been constructed on Tract B. Sand and limestone are mixed in this hopper to make aggregate (just where the cement and water are applied is not shown), and the final mix is weighed and loaded into revolving-bowl trucks which carry it off to the customer or construction job.

Shortly after this operation was commenced, the defendant placed a steel girder at right angles across the south side of the right of way, near the point where the present railroad dump ends, in such manner as to block the passage of trucks driving easterly down the old right of way beyond the still existing railroad dump. This act was not done in furtherance of any mining operation. The land is not now being mined, nor has it been for some period of time, nor was the girder "waste" as used and contemplated by the parties to the grant. Defendant stated he placed the girder because it was his land and he felt he had a right to do so. This precipitated the injunction suit.

Plaintiff-appellant complains of error in (a) awarding affirmative relief to the defendant on his cross bill and (b) dissolving parts of the temporary injunction and not restoring them in the final judgment. As to this claim of error (b), appellant contends that the temporary injunction should have been modified only so as to enjoin the defendant from entering upon the premises during the existence of the easement for any purpose except the removal of minerals, and from otherwise interfering in any manner whatsoever with the plaintiff, its shippers and consignees, in the "free and unrestrained use of said strip."

As affecting both the propriety of the injunction on the counterclaim and the failure of the court to modify the permanent injunction (instead of dissolving certain portions *in toto*), the appellant urges the issue that the lease to Sumners and Moore was *for a legitimate railroad use*. It has cited almost a page of authority and has devoted considerable printed and verbal argument to that issue. The respondent has met this issue with considerable brief and argument. Thus we have two immediate questions to decide:

(a) Did the defendant have a right to place the girder on the right of way so as to obstruct the passage of trucks?; (b) did plaintiff have the right, through its lessees, to use Tract B for the purpose of stockpiling of sand and limestone and the mixing of it for sale to customers as ready-mix concrete? The answer to these questions necessarily involves inquiry into the rights which both parties have in the old main line right of way. Both parties have treated this case somewhat as an action for a declaratory judgment or one to determine title, but we will limit our determination to the present rights of the parties in so far as we may without, by the approval or refusal of a permanent injunction, foreclosing some future right. At the outset we observe we are not here called upon to determine whether there is and has been a partial abandonment. Defendant's answer recognizes a right in plaintiff "to maintain a roadbed and move its trains." His counterclaim prays that plaintiff be enjoined "except according to the terms of the right of way deed." Further, he does not brief the question of abandonment but says it is immaterial. For the purpose of this opinion we must assume that *the right of way exists*.

The interest which plaintiff has across defendant's land is an easement. Conveyances of right of way are held to create easements only.[1] The general rule in respect to easements is that the owner of the servient estate may use the premises for any purpose which is not

1. 74 C.J.S. Railroads § 84c(1), p. 476; Brown v. Weare, 348 Mo. 135, 152 S.W. 2d 649, 652, 136 A.L.R. 286; State ex rel. State Highway Commission v. Griffith, 342 Mo. 229, 114 S.W.2d 976; Allen v. Beasley, 297 Mo. 544, 249 S.W. 387.

737

inconsistent with the purpose of the easement.[2] But, somewhat as a matter of public policy, the holder of a railway right of way easement can (subject of course to any reservations in the grant) exclude the owner of the servient tenement.[3] And what a railroad may lawfully do itself in respect to the use of its right of way it may delegate to be done by lessees.[4]

 In so far as the power of the railroad is concerned in the use of its property, it is limited only by its charter-franchise, and the general statement is that it has power to permit the use of its property for any purpose which is not inconsistent and does not interfere with its use for railroad purposes.[5] As to the right of the railroad, it is generally said that (subject to restraints which may be imposed by grant or withheld by quantity of title taken in eminent domain) it may use the right of way for all incidental purposes which are "reasonably necessary or convenient" in order to facilitate the operation of its business.[6] But this general statement is somewhat narrowed by the pronouncements that, in order for the use to be "for railroad purposes," it must

be one which is *primarily* for the public (railroad), even though the private individual may receive individual benefit; and a user where the primary benefit is for the individual and the public benefit is only incidental is not a proper railroad use.[7] Perhaps the most often quoted case which accords with this view is Lance's Appeal, 55 Pa. 16, 93 Am.Dec. 722, in which it is said, loc. cit. 25:

> "Hence it is that no one can pretend that a railroad company may build private houses and mills, or erect machinery, not necessarily connected with the use of their franchise, within the limits of their right of way. If it could, stores, taverns, shops, groceries and dwellings might be made to line the sides of the road outside the track —a thing not to be thought of under the terms of the acquisition of the right of way."

And under this (we think correct) view, the fact that the railroad may receive the benefit of securing an additional customer and thus increase its business is incidental and not controlling as to the nature of the use.[8] Otherwise there is no end to

---

2. 17A Am.Jur., Easements, sec. 112, p. 719; 28 C.J.S. Easements § 72, p. 750.

3. 74 C.J.S., Railroads, § 100b, pp. 505–506; St. Louis, K. & N. W. Ry. Co. v. Clark, 121 Mo. 169, 25 S.W. 192, 906, 26 L.R.A. 751; Boyce v. Missouri Pacific R. Co., 168 Mo. 583, 68 S.W. 920, 52 L.R.A. 442; Chicago, R. I. & P. Ry. Co. v. George, 145 Mo. 38, 47 S.W. 11. (For a contrary view, see Atlantic Coast Line R. Co. v. Bunting, 168 N.C. 579, 84 S.E. 1009.)

4. 44 Am.Jur., Railroads, sec. 131, p. 345; 59 A.L.R., annotation p. 1287; Grand Trunk Railway Co. v. Richardson, 91 U.S. 454, 23 L.Ed. 356; Weir v. Standard Oil Co., 136 Miss. 205, 101 So. 290, 292; Anderson v. Interstate Mfg. Co., 152 Iowa 455, 132 N.W. 812, 36 L.R.A., N.S., 512.

5. Thompson on Real Property, vol. 2, sec. 716, p. 405; 74 C.J.S. Railroads § 101, p. 507; see 61 A.L.R., annotation p. 731; 149 A.L.R., annotation p. 378; 36 L.R.A., N.S., annotation p. 512; City of Knox-

ville v. Kaiser, 161 Tenn. 607, 33 S.W.2d 411.

6. Rombauer v. St. Louis-San Francisco R. Co., 225 Mo.App. 78, 34 S.W.2d 155; Hodges v. Atlantic Coast Line R. Co., 196 N.C. 66, 144 S.E. 528, 59 A.L.R. 1284; Weir v. Standard Oil Co., 136 Miss. 205, 101 So. 290; see City of Sturgeon v. Wabash R. Co., 223 Mo.App. 633, 17 S.W.2d 616.

7. 74 C.J.S. Railroads § 101a, p. 508; Neitzel v. Spokane International Ry. Co., 65 Wash. 100, 117 P. 864, 36 L.R.A., N.S., 522; Sparrow v. Dixie Leaf Tobacco Co., 232 N.C. 589, 61 S.E.2d 700; see Wilczinsky v. Louisville, N. O. & T. Ry. Co., 66 Miss. 595, 6 So. 709, 712; see St. Louis, I., M. & S. R. Co. v. Cape Girardeau Bell Tel. Co., 134 Mo.App. 406, 114 S.W. 586, 588.

8. Sparrow v. Dixie Leaf Tobacco Co., 232 N.C. 589, 61 S.E.2d 700, 703, 704, and cases cited; Bond v. Texas & P. Ry. Co., 181 La. 763, 160 So. 406, 408–409.

which the railroad might go in letting the use of the right of way.

Whether a use is primarily for the benefit of the railroad or the individual is a question of fact which often becomes simply a matter of degree to be determined according to the facts in each case, and the decisions over the country are not always in accord. It is generally held that, as a depot is a place for the gathering of passengers for entrainment, so a stockyard is a "depot" for the gathering of livestock for shipment.[9] A grain elevator is a depot for the gathering and handling of grains for shipment.[10] A warehouse, when used for the receipt and delivery of freight, is a proper railroad use.[11] The maintenance of bulk stations for the receipt of carload shipments of oil is also held to be a proper use.[12]

As to a variety of other things, such as lumbersheds [13] and wholesale houses,[14] the decisions are not in accord.

Still others, such as a tobacco warehouse,[15] a cotton gin,[16] a cottonseed gathering house,[17] a retail filling station,[18] and a coal chute,[19] are held not to be proper railroad uses. In Missouri the construction of bunkhouses for employees, when necessary to have them available in order to combat rock slides, was held a necessary railroad use.[20] A hotel and eating house for the accommodation of its employees is a primary railroad use.[21] But the maintenance upon the right of way of coal sheds to which coal was delivered by cars on side track and from which coal was sold at retail was said not to be a proper railroad use.[22]

█ In this case the source of the railroad's right to use came from a grant and not by exercise of eminent domain. The general statements in respect to the right to use are valuable as a guide, but the ultimate question in this case must be determined from the grant; and, whatever the general law may be, the railroad's right to use is limited to (or extended by) that permitted by the grant; and the burden of servitude cannot be increased beyond that given by the grant.[23]

9. St. Joseph, St. Louis & Santa Fe R. Co. v. Smith, 170 Mo. 327, 70 S.W. 700, 702.

10. Gilliland v. Chicago & Alton Ry. Co., 19 Mo.App. 411, 416; Gurney v. Minneapolis Union Elevator, 63 Minn. 70, 65 N.W. 136, 30 L.R.A. 534.

11. Mississippi Investments, Inc., v. New Orleans & Northeastern R. Co., 5 Cir., 188 F.2d 245; Anderson v. Interstate Mfg. Co., 152 Iowa 455, 132 N.W. 812, 36 L.R.A.,N.S., 512; Oregon Short Line R. Co. v. Ada County, D.C.Idaho, 18 F. Supp. 842.

12. Weir v. Standard Oil Co., 136 Miss. 205, 101 So. 290; Mitchell v. Illinois Central R. Co., 384 Ill. 258, 51 N.E.2d 271, 149 A.L.R. 369.

13. Lyon v. McDonald, 78 Tex. 71, 14 S.W. 261, 9 L.R.A. 295; City of Long Beach v. Pacific Electric Ry. Co., 44 Cal.2d 599, 283 P.2d 1036, 1038.

14. Neitzel v. Spokane International Ry. Co., 65 Wash. 100, 117 P. 864, 869, 36 L.R.A.,N.S., 522; City of Knoxville v. Kaiser, 161 Tenn. 607, 33 S.W.2d 411.

15. Sparrow v. Dixie Leaf Tobacco Co., 232 N.C. 589, 61 S.E.2d 700.

16. Bond v. Texas & P. Ry. Co., 181 La. 763, 160 So. 406.

17. Wilczinsky v. Louisville, N. O. & T. Ry. Co., 66 Miss. 595, 6 So. 709.

18. In re Chicago & N. W. Ry. Co., 7 Cir., 127 F.2d 1001 (8).

19. Lance's Appeal, 55 Pa. 16, 93 Am.Dec. 722.

20. Rombauer v. Frisco, 225 Mo.App. 78, 34 S.W.2d 155.

21. Omaha & St. L. Ry. Co. v. Wabash, St. L. & P. R. Co., 108 Mo. 298, 18 S.W. 1101, 1103.

22. City of Sturgeon v. Wabash Ry. Co., 223 Mo.App. 633, 17 S.W.2d 616.

23. 74 C.J.S. Railroads § 82, p. 466; 17A Am.Jur., Easements, sec. 115, p. 723; see Kavanaugh v. St. Louis Traction Co., 127 Mo.App. 265, 105 S.W. 278, 282; see O'Brien v. New York, N. H. & H. R. Co., 189 App.Div. 703, 179 N.Y.S. 160.

In construing such grant it is our task to endeavor to arrive at and enforce the intention of the parties.[24] And it is sometimes said that the intention of the grantor is most important.[25] We endeavor to ascertain this intention from the whole instrument; but if, after examining the instrument, the language leaves the intention of the parties doubtful, then we next turn to and consider the situation and circumstances of the parties at the time of the execution of the grant, the "background," in an endeavor to learn what was within their contemplation at that time.[26]

The instrument in question grants "a right of way for the railroad about to be constructed." It describes "said right of way" as comprising 2.52 acres and states that the intention is to convey "surface rights only for a right of way." It reserves to the grantor certain rights to mine under "said right of way" and to build ponds, dump waste material, and sink shafts on "said right of way," provided that in so doing "the use of said right of way shall not unnecessarily be impaired for use by said railroad company in the maintenance of its roadbed and the operation of its trains." And finally it provides that "it is distinctly understood that the strip of land is for a railroad right of way and is to revert to the grantor its successors and assigns if it be abandoned for that purpose." Nowhere in this instrument do we find, as is true of many instruments of this nature, the words "for railroad purposes" or similar expressions.

What did the parties mean by a "right of way" in this instance? Had they consulted Webster's New International Dictionary, Second Edition, they would have found a right of way defined as:

"A right of passage over another person's ground. * * * The land, other than storage or station yards, occupied by a railroad for its tracks, esp. for its main line."

In City of New York v. New York & H. R. Co., Sup., 169 N.Y.S. 12, 14, it is said:

"There is, of course, a distinction between the property of a railroad company upon which it operates its trains, and which is known as a right of way, and property that it may acquire and hold for incidental purposes, as for storage, repairs, equipment, cleaning, furnishing of equipment, etc. The primary purpose and use of the right of way is the running of trains thereover, and it may be that the discontinuance of such a use would forfeit the title of the railroad company to the land. In the case of a railroad yard the company is not committed to any form of use; that is, the space might be occupied to-day by railroad tracks and tomorrow some entirely different use might be adopted that did not involve the use of tracks."[27]

We think it is obvious the parties to the instrument did not intend to extend the uses beyond those which are permitted by the general statements heretofore made;

24. 74 C.J.S. Railroads § 81a, p. 463; see Tracy v. Klausmeyer, Mo.App., 305 S.W. 2d 84, 89; see State ex rel. State Highway Commission v. Union Electric Co. of Mo., 347 Mo. 690, 148 S.W.2d 503, 505.

25. 137 A.L.R., annotation pp. 639–640.

26. American Law of Property, sec. 8.65; Restatement of the Law of Property, secs. 241, 242; Elliott on Railroads, vol. 2, sec. 1153, p. 617; Missouri, K. T. Ry. Co. of Texas v. Anderson, 36 Tex.Civ.App. 121, 81 S.W. 781; In re Chicago & N. W. Ry. Co., 7 Cir., 127

F.2d 1001, 1005; Wilczinsky v. Louisville, N. O. & T. Ry. Co., 66 Miss. 595, 6 So. 709; Beach Land Amusement Co., Inc., v. Staten Island Rapid Transit Ry. Co., 3 Misc.2d 734, 153 N.Y.S.2d 692; see Abercrombie v. Simmons, 71 Kan. 538, 81 P. 208, 1 L.R.A.,N.S., 806; see Vermilya v. Chicago, M. & St. P. Ry. Co., 66 Iowa 606, 24 N.W. 234.

27. For other definitions see Chamberlain v. Missouri Pacific R. Co., 335 Mo. 1120, 75 S.W.2d 835, 837; Chicago & N. W. Ry. Co. v. People ex rel. McGough, 195 Ill. 184, 62 N.E. 869, 870.

and we think further that the whole tenor and effect is that the parties contemplated a more restricted use than just generally for any railroad purpose. There were certain mining reservations which conflict with any extensive use. There was even a prohibition against fencing when mining or manufacturing was carried on on the premises. The phrase "the use of said railroad right of way * * * in the maintenance of its roadbed and the operation of its trains" is some indication of the extent of the operation which the parties were considering. We think that we would be stretching the use beyond the contemplation of the parties to say that the instrument was intended to grant a right of way which could be used for the purpose of stockpiling sand and limestone and the mixing of it for the purpose of prosecuting a private business.

In this case sand and cement are brought in and unloaded on Tract A. From there the sand is hauled by truck to, and piled upon, Tract B (the tract in question). Crushed limestone, obtained locally, is hauled to and put in storage piles upon Tract B. There the sand and limestone are mixed in a hopper, and the resulting aggregate is loaded into revolving-bowl trucks which haul it out for delivery to the ready-mix company's customers. No unloading from cars is done on Tract B. It is devoted to the stockpiling of material (some shipped in and some hauled in locally) and to the mixing process.

We think this is an operation which is one *primarily* for private use and which is beyond the contemplation of the parties as expressed in the grant. *Assuming* that the loading and unloading of freight is a necessary ancillary use of the right of way in the receipt, carriage, and delivery of freight (see post, footnote 29), we think a divorce from the primary railroad use is effected when the sand is picked up at its place of unloading and hauled away by truck. The transportation and delivery has been completed when the material is unloaded and given over to the customer. The fact that the railroad had another place available (Tract B) for the stockpiling and mixing of the articles shipped, with other material hauled in locally, was a fortuitous circumstance perhaps, but such storage and manufacturing process is not necessary to the transportation or unloading, and such stockpiling and mixing operation could just as well be performed on any other tract of ground. The character of the handling is no longer intimately associated with transportation. It is our conclusion that such stockpiling and mixing operation now being carried on at Tract B is a servitude to which neither the railroad nor its lessee has a right to subject the land.

However, we think that the use granted to the railroad did and does involve certain things intimately connected with the operation of a railroad line. It is not disputed that this would include the maintenance of power and communication lines [28] and we think it also includes the incidental use of loading and unloading of freight, even the holding of it temporarily for delivery, together with the necessary right of ingress and egress and the right of passage over the right of way for that purpose.[29] The maintenance of the girder barricade is a present obstruction and threat to any rightful and legitimate use the plaintiff may choose to make of the right of way under the grant. The operation of a sand and limestone stockpiling and mixing business on Tract B is an additional burden not contemplated by the grant.

28. 74 C.J.S. Railroads § 99f, p. 504; Eureka Real Estate & Inv. Co. v. Southern Real Estate and Financial Co., 355 Mo. 1199, 200 S.W.2d 328; St. Louis, I. M. & S. R. Co. v. Cape Girardeau Bell Tel. Co., 134 Mo.App. 406, 114 S.W. 586.

29. Tompkins v. Atlantic Coast Line Railroad Co., 213 Ga. 48, 96 S.E.2d 603; Hohl v. Iowa Cent. Ry. Co., 162 Iowa 66, 143 N.W. 850; Hall v. Bowers, 117 Neb. 619, 222 N.W. 40, 225 N.W. 49, 61 A.L.R. 724.

While the temporary injunction did not prevent the defendant from exercising any right of user in the right of way which he at that time had, its language was so broad that, had it been made permanent, it would have foreclosed rightful entry by defendant under any and all circumstances in the future, and in effect gave plaintiff full and unrestricted use of the strip for all purposes and for all time to the complete exclusion of the defendant. Nor do we think that modification in the manner suggested by the appellant was required. It had served its purpose, good or bad, until supplanted by the permanent injunction; and we do not believe that a wrongful user can ask a court of equity to protect him in his making of a wrongful use. Even though it is difficult to see how the issuance of the temporary injunction could have resulted in any financial injury to the defendant during the period of and under the circumstances of its existence, we cannot hold the court to be in error in partially dissolving it and supplanting it by the judgment which was finally rendered.

As to the injunction on the cross-petition, it enjoined the plaintiff from (only) any use which interfered with defendant's right to enter for mining purposes as reserved in the deed. This was less than the defendant was entitled to. Plaintiff should have been enjoined from leasing or permitting the use of the premises for the purpose of operating a sand and rock piling and concrete mixing business.

Both parties in their briefs have requested that we render such judgment as should have been rendered.[30] But it will be noticed that paragraph 3 of sec. 512.160 RSMo 1949, V.A.M.S., which provides that the appellate court shall "give such judgment as such court ought to have given," is subject to the provisions of paragraph 2 of such section, which requires that no appellate court shall reverse any judgment unless it believes that error was committed by the trial court *against the appellant.*

▆ The defendant's appeal has been dismissed. He is here in the same position as though he had not appealed and therefore appears only for the purpose of upholding the action of the trial court. Where the error is in appellant's favor and the respondent has not appealed, he (respondent) is not entitled to judgment for affirmative relief in excess of that rendered by the court below.[31]

Plaintiff has complained of error in exclusion of proof (a) in respect to a claim that defendant had in the past negotiated with the plaintiff for the building of a ramp for the loading of scrap iron on the right of way adjacent to *another* tract lying west of the tract involved in this case; (b) that plaintiff has in force many leases similar to the one involved with a view and purpose of increasing railway traffic; (c) that the lease was on a standard form and followed a common practice; (d) that the Interstate Commerce Commission has zoned various railroads so as to establish a method and standard price of leasing. Under the theory we apply to this case we think all those things are immaterial.

Plaintiff also complains of the exclusion of the Joplin ordinance prohibiting mining within the city limits. We think this ordinance is immaterial to the issues which we have to decide on this appeal, although it might or might not be competent in some other action between the parties. The ordinance could not grant to the plaintiff a right in defendant's land which plaintiff did not have before—and for aught we know,

30. Anison v. Rice, Mo., 282 S.W.2d 497; Laumeier v. Laumeier, 308 Mo. 201, 271 S.W. 481.

31. Lynn v. Stricker, Mo.App., 213 S.W. 2d 672; Reece v. Van Gilder, Mo.App., 281 S.W.2d 27; Whittaker v. Lewis, 264 Mo. 208, 174 S.W. 369; Moore v. Hoffman, 327 Mo. 852, 39 S.W.2d 339(18), 75 A.L.R. 135; Concrete Steel Co. v. Reinforced Concrete Co., Mo.App., 72 S.W.2d 118, 120; Krummenacher v. Western Auto Supply Co., Mo.App., 206 S.W.2d 991, 994.

tomorrow the City of Joplin may be happy to have the mining industry revived within its city limits.

The judgment is affirmed.

STONE, P. J., and McDOWELL, J., concur.

## On Motion for Rehearing

### PER CURIAM.

The judgment on the petition prevents defendant from erecting any fences or girders on the right of way. These were the acts plaintiff had complained of. This was all defendant had done or threatened to do. If there was an implied threat of other interference with plaintiff's lawful possession, then that portion of the judgment restraining the defendant from making any use which interferes with plaintiff's use for a right of way was sufficient to meet that threat.

As to the judgment on the counterclaim, we agree that defendant had not made any bona fide attempt to exercise his mining rights, build trams, ponds, et cetera. But defendant does have that right, and the maintenance of large piles of sand and crushed stone do constitute some threat against the exercise or assignment of that right. In any event, the judgment restrained the plaintiff only from doing that which it had no right to do and, if error, was harmless.

If the parties desire further delineation of their rights, they should seek such in an appropriate action.

The appellant's motion for rehearing or to transfer the cause to the Supreme Court is overruled.